# CHARLESTON.

WALTER W. FLEMING, *Executor, v.* GEORGE A. HARTRICK.

## (No. 5533)

Submitted January 19, 1926. Decided February 2, 1926.

1. PLEADING—*Omission From Caption of Declaration of Name of Court in Which Filed Held Immaterial.*

   The ommission from the caption of a declaration of the name of the court in which it is filed, being mere matter of form, is rendered immaterial by section 9 of chapter 125 of the Code. (p. 716).

   (Pleading, 31 Cyc. p. 526.)

2. SAME—*Declaration or Other Pleading Not Rendered Void Because Signed by Attorneys in Firm Name.*

   A declaration or other pleading is not rendered void because signed by attorneys in their firm name instead of in their individual names. (p. 717).

   (Pleading, 31 Cyc. p. 526.)

3. AUTOMOBILES—*Rule Requiring Such Control Driver Can Stop Within Distance in Which He Can See Danger Inapplicable, Where Dangerous Situation Suddenly Appears.*

The general rule requiring the driver of an automobile to maintain a speed sufficiently slow to have such control of it that he can stop it within the distance in which he can plainly see an obstruction of danger, does not apply to a case where a dangerous situation which he has no reason to expect suddenly appears in front of his car.  (p. 722).

(Motor Vehicles, 28 Cyc. p. 29.)

4. NEGLIGENCE—*Preponderance of Evidence Required to Establish Negligence.*

. Negligence is never presumed: it must, when relied on as the basis of an action for damages, be established by a preponderance of the evidence, and unless so established the plaintiff is not entitled to recover, and the court should so instruct the jury.  (p. 724).

(Negligence, 29 Cyc. p. 621.)

5. AUTOMOBILES—*Driver, Attempting to Avoid Collision and Striking Pedestrian Not Liable.*

Where, as in this case, the act of negligence relied on to sustain plaintiff's action, is solely the act of a third person, the person sued is not liable.  (p. 727).

(Motor Vehicles, 28 Cyc. p. 38.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Marion County.

Action by Walter W. Fleming, executor of his deceased wife, against George A. Hartrick. Judgment for plaintiff, and defendant brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Shaw & Shaw,* for plaintiff in error.
*Neely & Lively,* for defendant in error.

MILLER, JUDGE:

This is an action for the alleged wrongful and negligent killing by the defendant of plaintiff's wife, by running over her with his automobile while she was walking on or over

the railway track of the Monongahela West Penn Public Service Company paralleling the public street or road known as the Fairmont and Weston Turnpike, south of the city limits of the City of Fairmont, in Marion County.

On a plea of not guilty the jury returned a verdict for plaintiff for $3,500.00, on which the court pronounced the judgment complained of on the present writ of error.

The only errors assigned in the petition for the writ, or in the briefs of defendant's counsel are: (1) the refusal of the trial court, on defendant's motion, to exclude plaintiff's evidence and direct a verdict for the defendant; (2) the denial of defendant's motion to enter judgment in his favor notwithstanding the verdict; (3) for other errors apparent on the face of the record.

In argument and in their brief, however, counsel for defendant urge that the trial court erred in denying his motion to strike out plaintiff's declaration as amounting only to a stray paper, and in fact no pleading on which judgment can be properly founded. Two criticisms of the pleading are interposed; one that it does not bear the title of Circuit Court of Marion County; the other that it is signed by "Neely & Lively, p. q."

The caption of the declaration is: "State of West Virginia, County of Marion." Although all forms of declarations do show in what court the action is brought, we have found nothing in our statute requiring it. The summons must show in what court the defendant is required to answer the suit or action. If the declaration is filed in that court, it would seem to be a matter of form merely for the pleading also to state the court in which it is actually filed. · Our statute, section 9, chapter 125 of the Code, says: "No action shall abate for want of form, where the declaration sets forth sufficient matters of substance for the court to proceed upon the merits of the case." And in Indiana, where it would seem the statute requires the declaration to state the court in which it is filed, it is regarded as mere matter of form, and the want of it not fatal, nor reach by demurrer. *Smith* v. *Flack*, 95 Ind. 116, 121, and cases cited. In New York, also, the same rule is affirmed. *Van Namee* v. *Peoble,* 9 How. Prac.

198; *Van Benthuysen* v. *Stevens,* 14 How. Prac. 70. And to the same effect is *Clark* v. *Comford,* 45 La. Ann. 502; *Livingston* v. *Coe,* 4 Neb. 379; and *Robinson* v. *Peru Plow Co.,* 1 Okla. 140.

Respecting the manner and form of signing the pleading, there seems to be no merit in the point of error. The forms given in the form books all admit of signatures of counsel with the suffix ''p. q.'' The defendant's own petition is signed ''Shaw & Shaw'', the firm name; but it is replied that the name of the defendant is first signed by Shaw & Shaw, the firm name—a distinction without a difference, we think. It is conceded that if the individual names of the partners were signed to the pleadings, it would be good, but that there is no warrant for signing the firm name, as firms are not as such licensed to practice law in the courts—a proposition supported by no citation of authority, doubtless because none could be found. There is authority for the counter proposition, that attorneys may sign in their firm names. 31 Cyc. 526; *Zimmerman* v. *Wead,* 18 Ill. 304; *Nave* v. *Lebanon Bank,* 87 Ind. 204. So we negative both propositions advanced in support of the motion to strike out the declaration.

Plaintiff's case, by pleading and proof, is predicated on the theory that defendant, at and just before the time of the injury, was operating his car over the public road at a dangerous rate of speed; and (2) failed to have it under his control in time to avoid hitting and killing the deceased. Defendant's motion to exclude plaintiff's evidence before verdict, and the court's denial of his motion to direct a verdict in his favor *non obstante veredicto,* are both based on his claim that the evidence failed to sustain his theory of negligence, but supported his theory of an unavoidable accident, and an insufficient declaration to sustain plaintiff's theory or right of recovery.

The only evidence relied on by plaintiff was the oral testimony of defendant himself and of Silverman, who was a passenger with him at the time of the injury, and the physical facts attending the injury and death of Mrs. Fleming. Defendant and Silverman were the only witnesses to the tragedy. The facts are few; and practically the only conflict in the evidence is the slight discrepancy between the two wit-

nesses as to the rate of speed of defendant's car immediately before it ran upon and injured the decedent. On the inquest of the coroner, both witnesses substantially agreed that the car was traveling at a speed of from fifteen to twenty miles per hour. Silverman said it was from fifteen to eighteen. Defendant on the trial said it was from eighteen to twenty. On the trial and after he had been taken to the place of the accident by plaintiff and his attorney and had done some experimenting in driving his car over the same section of road where the accident occurred, and had conferred with them, Silverman came to the conclusion, and swore that he estimated the speed of the car to have been about twenty-five miles per. hour. But he says he did not watch the speedometer, and couldn't say exactly. Manifestly the effort of plaintiff and his counsel was to establish by the testimony of Silverman and the physical facts attending the accident, that the rate was over twenty and as much as twenty-five miles per hour, this for the purpose of proving an unlawful rate of speed prescribed by the statute and laws of the road. Whether, if the rate was over twenty miles the speed was unlawful, depends upon the question whether the section of the road where the accident occurred was an open country highway or a suburban street. The defendant contends for the former; the plaintiff for the latter. The maximum rate of speed for cars like defendant's, prescribed by section 95 of chapter 43 of the Code, as amended by Acts 1923, is for open country roads thirty-five miles per hour, suburban streets twenty-five miles per hour, and on urban or city streets fifteen miles per hour. The statute, section 75, chapter 43 of the Code, defines these classes of streets and roads; and an open country highway is thereby defined: ''A highway, or portion thereof, greater than one-fourth of a mile in length, along either side of which the buildings average more than three hundred feet apart.'' A suburban road is defined as not less than one-fourth of a mile in length, on either side of which buildings average less than three hundred feet apart, but more then fifty feet. It is conceded that the road in question was not an urban street as defined by the statute; and from the evidence on the subject, including that of S. B. Miller, engi-

neer, called by plaintiff, we conclude that the road both ways
from the place of the accident for the requisite distance,
brought it within the definition of an open country road as
defined by the statute, and that if the defendant was not
traveling to exceed thirty-five miles per hour he was within
the law as far as his speed was limited by statute; and if it
be true, as he swears, that he was not traveling to exceed
twenty miles per hour, he was not exceeding the speed limit
even if the road was a suburban street. So that negligence, if
any, rendering him liable in this action can not be supported
by proof of the speed of his car.

But was defendant otherwise negligent in the operation of
his car, so as to render him liable for the death of Mrs. Flem-
ing? The place of the accident was on said public road, about
75 to 80 feet south of "Kennedy Stop" on the line of the
Monongahela West Penn Public Service Company's electric
railway, paralleling said road. The road on each side of
this stop was practically straight for quite a distance, and
down grade for most of the way to the city limits of the City
of Fairmont. The time of the accident was March 25th, at
about 7:45 P. M. It was dark and raining; and travelers in
automobiles, including defendant were running with lighted
lamps. Defendant with Silverman as a passenger was driv-
ing a Dodge coupe. He lived at Monongah, another station
on the electric line, and was superintendent of the public
schools in that town. The road was paved with brick, and
was fourteen feet wide, with a twelve inch curb on each
side of the pavement, making with the curb a total width of
sixteen feet; but the uncontradicted evidence is that the curb,
built of poor material, had crumbled down to the depth of two
to two and a half inches and added little to the width of the
road. Between the road and the ends of the crossties of the
railroad there was an unpaved space of ballast, and the ballast,
such as it was, in this space and between the ends of the cross-
ties and up to the steel rail next to the road, was of cinders;
and the entire width from the curb to the steel rail was from
32 to 34 inches, practically the diameter of the tires on de-
fendant's car; and the ballast did not in all places come to
the top of the crossties; but generally the cinders were flush

with the ends of the ties, and conformed to the top of the
curb. The steel rail was 4½ inches deep above the ties. Ac-
cording to one witness, S. B. Miller, a civil engineer, who took
some measurements, the top of the steel rail at the point of
the accident was seven or eight inches above the brick pave-
ment. This witness says, however, that where the cinder bal-
last was, as in some places, flush with the top of the ties, the
wheels of the car in going upon the railway track would have
nothing to impede them except the steel rail 4½ inches above
the ties. Told in the language of defendant, and corrobor-
ated by Silverman, the accident happened in this way: "We
were driving down the road during the night. It had been
raining for some time. It was dark, and as I rounded the
top of Peacock Hill an automobile came towards us with
bright lights on. I dimmed my lights, hoping he would dim
his. He failed to dim, so I turned my bright lights on before
he passed me. As we rounded the bend, we saw another car
coming towards us at a very high rate of speed and with very
bright lights. I told Morris when we passed the other car,
since he failed to dim, I was not going to dim any more. I
did not dim my lights. He was coming up almost in the mid-
dle of the road, and I had to keep getting off farther and
farther in order to let him by. Just as his headlights, the
headlights of his car got alongside of me, it took the glare of
his lights out of my eyes, and right at that time the figure of
a woman loomed up right in front of my right wheel. I
pulled the wheel to the left to hit the other car and avoid hit-
ting her. I hit her. Did my best to stop the car. As soon
as I got stopped—as soon as I could stop the car, we went
back to pick up Mrs. Fleming." As proof of being crowded
off the road in the manner stated, the witness says the car re-
sponsible just nicked his left rear fender, from which a slight
shock was felt; and the impression of the witness was that
the collision threw his car over on the railway track, so that
after the impact the right wheels of the car were both over
between the rails. The witness says that as the fast moving
oncoming car approached defendant slightly slackened his
speed. His car was equipped with a wiper on the windshield,
and though it was raining he was able to see ahead a reason-

able distance considering the time of the night and the character of the weather and the blinding effect of the lights on the approaching car. Defendant testified that when he sighted the approaching car, it was more than three times the length of the court room, estimated from seventy to eighty feet, or about 240 feet away. And in response to questions by plaintiff's counsel, defendant testified:

"Q. And you saw that he was taking up, you saw at that distance that he was taking up the most of the road with his car? A. I saw that he was at that time, but I didn't know that he was going to continue that way. Q. You assumed then that at the proper time he would yield to you your proportion of the road to which you felt you were entitled? A. Yes, sir. Q. From the time you first saw this large car approaching you, could you, with your car at the rate it was traveling have stopped before the passing car reached you? A. Yes, sir. Q. And if she had been on the outside of the street car rail instead of over inside the tracks, wouldn't it have been imposible for you to have failed to see her for say 60 to 75 feet before you struck her? A. No, sir. I think it would have been impossible for me to see her if she had been anywhere on the ties."

Appreciating the force of the testimony of the eyewitnesses as to the rate of speed and the evidence tending to show that the accident was an unavoidable one so far as defendant was concerned, plaintiff's counsel rely mainly on the physical facts occurring at the time; first, the fact that defendant's car went over the railroad in view of the obstacles in the way, and the distance it ran on the ties after it struck deceased. Silverman says he thinks they ran over some ties, whether inside or outside the rails he don't know, before they struck Mrs. Fleming; that after they stopped they found the body of Mrs. Fleming about ten feet from the rear end of defendant's car; but he couldn't say how far the car ran after the second automobile passed them before it went over the rail of the street car track; he knew they bumped over several rails before they came to a stop. He couldn't say whether defendant applied the brakes before striking the street car track; thinks the car must have skidded, but couldn't say how

much. He says he noticed the speedometer as they were leaving Monongah, and that they were running around fifteen or eighteen miles per hour; that defendant was driving carefully all the way and within the speed limit of the law; and that when they sighted the car that drove them aside, it was running at a high rate of speed and taking nearly all the road; and that as a result it grazed defendant's car in passing, while he was doing all he could to avoid it. When Mrs. Fleming's body was found, as both witnesses say, she was lying in the middle of the track, face upward, with her feet toward Fairmont, the direction in which the car was going. Silverman thinks the car must have passed over her body. There is some evidence that defendant's car, including its length and the six or eight ties passed over after leaving Mrs. Fleming's body, tending to show that it ran some 25 or 26 feet after striking her. It is impossible to detail all the facts; but we have recited the main ones.

Now the question presented is, was there sufficient evidence of negligence, either as to the speed of the car, or as to defendant's control and management of the car, under all the facts and circumstances, to carry the case to the jury on those questions? It is suggested that it was the duty of the defendant, on seeing the approach of the other car and that it was occupying so much of the road, to stop his car. But is this the law? We think not. We said in *Ewing* v. *Chapman*, 91 W. Va. 641, that a traveler on a straight or comparatively straight section of highway, operating a rapidly moving vehicle, may use any part of the road without guilt or negligence on his part, provided he observes the regulations respecting the passing of other vehicles. If this be the law, and it is, had not the defendant in this case the right to assume that the driver of the car that manifestly forced him out of his lawful course, would observe the law when passing? If so, was he bound, before the emergency arose, to anticipate danger except by keeping on his side of the road running at a lawful rate of speed. He did not see Mrs. Fleming. No one says he did, or should have seen her on the railway track in time to avoid hitting her. Nor do we think it can be said with any show of reason that defendant because

of the circumstances surrounding him was called upon to stop his car and defer his journey, while others, including the deceased herself, braved the elements and accepted the incident dangers of travel. In *Ewing* v. *Chapman, supra,* it was suggested that because of the heavy fog and the difficulty of the drivers of the cars to see and maintain their proper places on the road, they may each have been guilty of negligence in using the road at all under such conditions. And it was said in that case that a low rate of speed might have enabled the drivers to see the other car in time to stop, as defendant says he did. But in the case here defendant plainly saw the approaching car which crowded him off the road; and the first instant he observed that the driver did not intend to respect his rights, he did all that he reasonably could to prevent a head-on collision and save the lives of the occupants of the two cars; and the instant he saw Mrs. Fleming on the railway track, he endeavored to swing his car to the left, but too late to avoid striking her. He could not remember when he first applied his brake after seeing Mrs. Fleming, nor whether, when he stopped, the brakes were set. He says the engine was running after he stopped. We fail to find negligence from the distance the car ran after hitting the deceased. Naturally the driver of a car confronted with such a sudden and unexpected emergency would apply the gas to get out of the way, and if afterward the car passed over an impediment and ran a little farther than the distance within which it might have been stopped running at a reasonable speed, it would import no culpable negligence, rather the contrary. In *Jacobs* v. *Jacobs,* 141 La. 271, an action against defendant by his guest riding with him when injured, the general rule that it is the duty of the driver of an automobile to maintain a speed sufficiently slow and to have such control of his car that he can stop it within the distance in which he can plainly see an obstruction of danger ahead, was affirmed; but says the court: ''That rule does not apply to a case where a dangerous situation which the driver of the automobile had no reason to expect suddenly appeared immediately in front of the car.'' Such we think is the law of this case, whether properly applied in the Louisiana case or not. In that case

the defendant in the nighttime drove over the bank into a canal near a bridge where there were no guard rails, being told beforehand that the road or street was safe and paved all the way.

Counsel for plaintiff appeal to the rule of *res ipsa loquitur*, which simply is that where the injury complained of would naturally not have been inflicted if the one having control of the instrumentality doing the act had not been at fault, a prima facie case of negligence is thereby established. This rule simply is that the fact of the occurrence warrants the inference of negligence. *Hines* v. *Beard,* 130 Va. 286, 293. Generally when plaintiff's right of action for injury is based upon defendant's alleged negligence, negligence will not be presumed from mere proof of the injury. *Keyser Canning Co.* v. *Klots Throwing Co.,* 94 W. Va. 346. Of course, when the instrumentality doing the injury is solely under the control of the defendant, as for example a fire arm, the injury would not naturally have happened if he had been using due care: a prima facie case is made by proof of these facts. *City of Charleston ex rel. Peck* v. *Dawson,* 90 W. Va. 150. But the rule does not cut off defenses. When applicable it simply calls upon defendant to relieve himself of the prima facie case thus made against him. The burden is still upon the plaintiff to make out his case by a preponderance of the evidence. ·

On the proposition that the evidence was sufficient to carry the case to the jury on the question of defendant's negligence as alleged, counsel for plaintiff cite us to the following decisions: *Rogles* v. *United Railways Co.* (Mo.), 232 S. W. 93; *Brown* v. *Des Moines Steam Bottling Works* (Iowa), 156 N. W. 829; *Trauerman* v. *Oliver's Admr.* (Va.), 99 S. E. 647; *Green* v. *Baltuch,* 191 N. Y. Sup. 70; *Mahegan* v. *Faber* (Wis.), 149 N. W. 397; *Forzley* v. *Bianchi* (Mass.), 132 N. E. 620, and *Hammond* v. *Morrison* (N. J.), 100 Atl. 154. We have examined all these cases carefully. The facts on which the decision in each of them depended clearly distinguish them from the facts on which our decision in the case before us must depend, and we do not think they are sufficiently pertinent to control our decision here. Two or three of them involved injuries sustained by pedestrians on sidewalks, over-

taken by drivers of trucks or automobiles who were negligent in the management of their machines and in not having them under control so as to avoid running them upon persons rightfully upon the sidewalks. We will refer to them respectively and endeavor to distinguish them from the case we have here. In the first case cited, it was contended that there was no evidence of negligence, and there was an instruction given to the jury properly telling them, that if the plaintiff was injured by reason of an unforeseen and unavoidable accident which could not have been anticipated by the defendant in the exercise of ordinary care, then plaintiff could not recover, and their verdict should be for the defendant. This is evidently the law of the land. No one can be rendered liable for injuries to another caused by an unavoidable accident. This is the law of the road, as in other places. In the case under review defendant's counsel insisted that there was no evidence from which negligence could be inferred. The court replied: "We can not agree to this contention, because there was abundant evidence showing negligence. (a) There was evidence that he was going at too great a rate of speed to stop before he went over the sidewalk; (b) that he gave no warning to plaintiff of his inability to stop; (c) that he failed to shut off his gas until after he went over such sidewalk. (d) Defendant's own evidence shows that the truck was in perfect condition, and it must have been the driver's fault, therefore, that it was not stopped before leaving the roadway of the street. (f) Indeed the fact that the driver permitted the truck to swerve from the street and to run upon the sidewalk, where it had no right to be, and over the plaintiff upon such sidewalk, where he had the right to be, was in itself evidence of negligence, if not gross negligence, in the operation of such truck, sufficient to submit the case to the jury." These facts have very slight semblance to the facts involved here. The railway track here was not a sidewalk, nor a place where pedestrians were expected to walk. The defendant did not carelessly drive his car upon the railroad track. He had not lost control of his car. What he did, he did deliberately, in the exercise of his best judgment, to avoid what would have been a head-on collision, and to save his own life and the life

of his passenger, not knowing of the presence of the deceased on the track. There was absolutely nothing shown from which the jury could rightfully have inferred negligence. In *Brown* v. *Des Moines Steam Bottling Works*, the driver had permitted his truck to be diverted from its main course of travel on the street, to the sidewalk, without any warning to the people standing there of the fact of its coming; and there was evidence in the case from which the jury might have found the driver was not looking ahead, and had but one hand on the steering wheel, and other acts of negligence justifying the verdict of the jury, such as are absent in the present case. In *Trauerman* v. *Oliver's Admr.*, the Virginia case, the evidence tended materially to show that defendant was running her car very much in excess of the speed limit allowed by city ordinance, and that while so doing she attempted to pass to the right of a beer wagon moving in the same direction, and that either because the space between the wagon and the curb was too narrow or because she failed to accurately steer the car, she side-swiped the wagon, and swerving to the right ran upon the sidewalk, where she struck the plaintiff's decedent, and then ran thirty-five feet beyond where he was standing. The vital question in the case was whether the injury complained of was attributable to a concurrence of defendant's negligence with the impact from the other car, or to the latter alone, as the sole proximate cause. And the evidence on this question made a case clearly for the jury. In *Green* v. *Baltuch*, the defense was that a large automobile running at a great rate of speed turned in ahead of defendant's automobile in order to pass it, and forced defendant to run his car on the sidewalk. The court said they did not think the evidence showed that defendant was in such a dangerous position as would justify him in driving upon the sidewalk to escape injury from the car which he stated turned in front of him in the act of passing, but on the contrary disclosed carelessness and want of experience on his part. There is no evidence justifying the theory of negligence in this case. There can be no doubt from the evidence that defendant drove over the railroad track to save his own life. That was then an unforeseen emergency which called for quick action. The scraping

of defendant's fenders by the passing car shows this. In *Mahegan* v. *Faber,* the judgment below was sustained on the ground that the evidence showed that deceased was killed by being struck by defendant's automobile, which the latter was negligently managing in an attempt to avoid a collision. The court said that an intervening cause of the accident did not in that case relieve the defendant if he also was negligent, as the jury were justified in finding. Wherein was the defendant negligent in this case? We fail to find a single fact justifying the inference of negligence on defendant's part. In *Forzley* v. *Bianchi,* the holding was that in the *absence of circumstances requiring a finding of justifiable cause* for driving the truck on the sidewalk, the plaintiff was entitled to recover. Can there be any doubt in this case that defendant had justifiable cause for turning out onto the railroad track?

The principle which we think controls the decision of this case is that which is applicable when the injury is the result of the negligent act of a third person, in which case the person sued is not liable. *Anderson* v. *Baltimore & Ohio Railroad Company,* 74 W. Va. 17. This is the rule except in those cases where the very negligent act alleged consists of exposing the injured party to the act causing the injury. *Hines* v. *Garrett* (Va.), 108 S. E. 690. This exception to the general rule is applicable where, as in this case, the defendant could not have been reasonably expected to anticipate the consequences for which the plaintiff seeks recovery. See Virginia cases cited in *Hines* v. *Garrett* for this proposition, and illustrating the proper application of the general rule and the exceptions thereto.

Our conclusion is to reverse the judgment, set aside the verdict and award the defendant a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*