# CHARLESTON.

TOCHEK *v.* MONONGAHELA TRANSPORT CO.

(No. 6600)

Submitted March 11, 1930.   Decided April 1, 1930.

*D. H. Hill Arnold* and *Terence D. Stewart* and *Ezra E. Hamstead,* for plaintiff in error.

*R. Shirley Taylor* and *Jesse M. Jaco,* for defendant in error.

MAXWELL, JUDGE:

The Monongahela Transport Company prosecutes this writ of error to a judgment of the circuit court of Monongalia county wherein Anna Tochek recovered $5,000 for injuries received through the alleged negligence of the transport company.   Said judgment was rendered upon the verdict of a jury.

On October 28, 1928, between five and six o'clock in the afternoon, the transport company was operating its bus in pursuance of its regular schedule between the city of Morgantown and Cassville, a village to the southwest of Morgantown.

The road is sixteen feet wide and of concrete construction. The bus driver, Wayne Robinson, stopped at Jere, a small mining settlement, and admitted two passengers, one of whom was the plaintiff, a woman seventy one years of age of Polish nationality, accompanied by a younger woman. These women sat on the first seat on the right of the bus, plaintiff being next to the window. A little farther on in the direction of Cassville, the driver admitted two other passengers, a man and woman, who took the first seat on the left of the bus, being directly behind the driver and across the aisle and a little to the rear of the two women passengers. Testimony shows that there was another passenger seated farther back in the bus. As the bus neared Cassville, there appeared some distance ahead a coupe occupying the middle of the road and going in the same direction. As the bus approached the coupe the bus driver sounded his horn to pass, but the coupe, after zigzagging from one side of the road to the other, drew into the middle thereof. To prevent hitting the coupe, the bus driver applied the brake, whereupon plaintiff fell forward and to the left striking the left side of her face directly below the eye upon the ticket register, a metal box or container elevated about three feet from the floor directly to the right of the driver. The bus driver stopped the bus and with the help of a passenger picked her up and put her in her seat. She got out at Cassville with the aid of her companion and went to her home, where later that evening she was attended by a physician.

As a result of her injuries, plaintiff instituted this action for damages claiming that the blow she received cut and bruised the ligaments leading to her left eye thereby rendering it permanently useless. The declaration, in four counts, charged, inter alia, that the bus was being operated at an excessive rate of speed, that no warning signal was sounded by the driver, that the driver without having a clear road got the bus into such a position in his attempt to pass the coupe that it became necessary to stop suddenly to avoid a collision and that the stop was made in such negligent and violent manner as to throw plaintiff forward. From a thorough examination of the record we find no evidence to sustain the charges as to excessive speed and failure to sound a warning. All witnesses

concur in the opinion that the bus was not traveling over thirty-five miles per hour (the maximum legal rate) and that the driver gave a warning, in fact several warnings; hence we shall confine ourselves to an examination of the facts regarding the alleged negligence of the driver in attempting to pass the coupe under the circumstances, and his manner of applying the brakes.

The most coherent account of the accident was given by Robinson, the driver, who testified with the aid of photographs taken at the instance of the defendant showing the approach to and the exact point where the bus slowed down to avoid collision. Briefly he testified as follows: That when he first saw the small car it was about 247 feet in front of him; that he was traveling 25 to 30 miles an hour and the small car was in the center of the road zigzagging back and forth, going about 10 to 15 miles an hour; that when he came within 100 feet of the small car, he first sounded his horn and applied his air brake so as to slow down, not stop; that within the space of about 25 feet he gradually slowed down the bus to 10 to 15 miles per hour; that when he first sounded the horn, the small car zigzagged to the left of the road; upon further warning, it drew to the center, and upon the third sounding of the horn, it swayed to the right of the road; that the purpose of sounding his horn was to pass; that when he came to within 50 feet of the small car, it swayed back to the middle of the road, thereupon he applied his brakes to keep from hitting it and slowed down to 5 miles per hour; that had he not done so, he would have rammed the small car or struck the abutment of a small bridge; and that the road was dry and free from traffic.

The plaintiff makes much of Robinson's statement that he thought the small car was trying to wreck him. It appears obvious to us that such statement refers to the moment when the small car drew to the center of the road directly in front of the bus. It would be a physical impossibility for one car to wreck another when they are some distance apart.

There is lack of conformity in the testimony of the plaintiff and her witnesses who were passengers on the bus as to the manner in which Robinson approached the coupe and his method of stopping. Melko Stanovich, who, with his wife,

Jeanette, sat directly behind the driver, said that Robinson started blowing his horn when 100 feet away from the coupe and blew it seven, eight, or ten times, but that he did not apply the brakes on the bus until within 10 or 15 feet of the coupe, and at that time the bus was traveling 25 miles per hour. He further testified that the coupe remained in the middle of the road. Jeanette, on the contrary, testified: "We saw another car in front and this car started to get in the middle of the road and wouldn't let the bus pass. He got in the middle so the bus couldn't pass, and the bus driver started blowing for the road." And, on cross-examination, in response to the question, "He (the bus driver) started to go around and it (the coupe) pulled in front of him?" answered, "Yes." Both of these witnesses had been interviewed previous to the trial by representatives of the defendant and their statements recorded. These were in evidence. In several important details, there is marked variance between them and the testimony of the same witnesses at the trial.

Mrs. Frances Shuty, the plaintiff's companion on the bus, said that she noticed a small car "wiggling around the road" in front of the bus, and that when the bus got close to the small car, Robinson blew his horn, but the small car did not give the road, and when he (Robinson) got close and saw he was going to hit the coupe, he pulled the brake and stopped suddenly. The plaintiff herself testified that the small car kept going from one side to the other of the road, and in answer to the question, "How close was the bus to the small car when the driver applied the brakes?" answered: "I don't know when—I don't understand how to say, but it was close to it when it stopped." And further: "Q. What did happen to you when the driver put on the brake, Mrs. Tochek? A. The bus stopped so suddenly it lifted me off the seat and I fell."

Although the three passengers above quoted all testify that they were jarred a bit when the bus slowed down to avoid the collision and that they grabbed hold of the seats in front of them to steady themselves, the plaintiff was the only one who fell out of her seat. An analysis of the evidence indicates that the bus in fact did slow down rather suddenly to avoid hitting

24

the coupe which pulled from the right side of the road to the center directly in the path of the on-coming bus, instead of remaining on the right side of the road as the bus driver had a right to suppose that it would do in response to his repeated signals. The testimony of the plaintiff and her witnesses is general with reference to the zigzagging movements of the coupe. These witnesses do not directly contradict the testimony of the bus driver that the coupe pulled in front of the bus when he started to pass after signaling. The inference to be drawn from the testimony of two of them is that the coupe did not pull to the right of the road and then return to the middle when the bus started to pass; but the only one of plaintiff's witnesses who was asked a specific question as to whether the coupe pulled in front of the bus when it started to pass around answered affirmatively, thereby confirming the bus driver. See testimony of Jeanette Stanovich, supra. We fail to see wherein the bus driver was guilty of negligent conduct in his manner of approaching the coupe or in his method of stopping the bus. Robinson states emphatically that he used only the air brake, which, according to numerous witnesses for the defendant, would bring the bus to a gradual stop rather than a sudden jerking stop. None of the witnesses could say positively that the emergency brake was used. The road law permits one vehicle to pass another after due warning has been given by the car in the rear and requires the car ahead to keep to the right. Code, c. 43, § 96 (e). In such situation, the driver of the car in the rear is not bound to anticipate that the car ahead will do other than stay on the right. "A person operating an automobile in a public highway, exercising reasonable care, may assume that others using the highway will also act with reasonable care; and he is not negligent in acting accordingly. Others may assume the same of him. He has a right to assume that the drivers of other vehicles will observe the law of the road, and he is not guilty of contributory negligence in acting upon such assumption, unless he has knowledge to the contrary." Berry on Auto. (6th Ed.) vol. 1, § 225. Assuming that the bus did not gradually slow down as it approached the coupe, as was testified to on behalf of the plaintiff, nevertheless the bus was traveling within the legal rate of

speed and the operator was blowing his horn, which is all that was required of him under the circumstances. The evidence warrants the belief that the coupe, after drawing to the right of the road in response to repeated warnings, did in fact suddenly pull in front of the bus. In such emergency, not created by the bus driver's negligence his principal is not responsible for consequences of his action which seems to have been the very best course he could pursue under the circumstances to avoid a probably serious collision. Even if he did not exercise the soundest judgment in such a situation, his failure to do so would not create liability. "The rule, therefore, resolves itself to this: That a person confronted with a sudden peril or emergency will not be held responsible for the consequence of an act or course of action, or omission, which, had he indulged in under normal circumstances, would charge him with negligence; except that he will be held responsible for such acts or omissions which an ordinary prudent person would have avoided even in an emergency or peril similar to one in question." Vartanian, The Law of Auto., § 6.

Although the plaintiff in error has assigned numerous errors in the trial of the case, we consider only the question of the negligence of the bus driver. That circumstance is controlling. In the light of the foregoing evidence, as disclosed by the record, the peremptory instruction offered by the defendant should have been given. We therefore reverse the judgment, set aside the verdict, and remand the case for further proceedings.

*Reversed and remanded.*