ROBERT M. WOLFE

*v.*

BEATTY MOTOR EXPRESS, INC., *et al.*

(No. 10872)

Submitted September 10, 1957. Decided December 10, 1957.

*Ezra E. Hamstead,* for plaintiff in error.

*Hale J. Posten, Robert T. Donley,* for defendant in error.

BROWNING, JUDGE:

This is an action of trespass on the case instituted by the plaintiff, Robert M. Wolfe, to recover for personal injuries sustained when the automobile of plaintiff struck the parked tractor-trailer unit owned by the defendant, Beatty Motor Express, Inc., and operated by the defendant Cunningham. At the conclusion of plaintiff's evidence, defendants moved the court to strike the evidence of the plaintiff and direct a verdict in favor of the defendants, which motion the court sustained, and judgment was entered thereon, to which judgment this Court granted a writ of error and supersedeas on February 4, 1957.

The sole assignment of error is the action of the trial court in striking the evidence of plaintiff and directing a verdict in favor of the defendants thereby raising the question of whether the trial court was justified in finding, as a matter of law, that plaintiff was guilty of negligence which contributed proximately to his injuries. To determine this question, it will be necessary to set forth in detail the plaintiff's evidence.

The accident occurred at approximately 6:30 P. M. on the evening of November 16, 1955, a short distance north of the Morgantown corporate limit on a stretch of road known locally as "Mile Ground". The "Mile Ground" is a part of U. S. Route 119, and West Virginia Route 73, and is a heavily traveled main route to and from Morgantown, outlying communities, and points in Pennsylvania. At the point where the accident occurred, the road is 32 feet wide from curb to curb, with a white center line, and, at a point 5 feet above the surface of the road, visibility under

normal conditions is unobstructed for more than 800 feet in each direction. A gasoline service station was situated on the right side of the road going from Morgantown with a paved entrance area extending along the highway for 160 feet. With the exception of the pump island, the paved and graveled portions of the service station lot provided a parking area, the minimum width of which was 30 feet. Approximately 20 feet north of the service station was a private driveway.

The plaintiff introduced the testimony of eleven witnesses: A surveyor, who testified to the above mentioned distances; the service station operator; five persons who had traveled or were traveling the same road at approximately the same time; himself; a deputy sheriff who investigated the accident; and two physicians. In regard to the medical testimony, there is ample evidence that plaintiff received extensive permanent injuries, but such is not germane to the question presented by this writ of error.

Eight witnesses testified that: The day of November 16, 1955, had been cloudy with a fine rain falling all day; it began to get dark early; a fine mist was coming down at the time of the accident; the tractor-trailer of the defendants was parked slightly to the north of the service station, in the right-hand lane of the highway, blocking the private driveway; and no warning flares had been set out by the driver.

The service station operator testified that: The defendant driver came into his station to buy fuses and a bulb; the light on the north end of the station was not burning; and, the tractor-trailer was in total darkness. On cross-examination, this witness stated that: A few minutes prior to the accident, he had ascertained, from the door of the station, 75-80 feet from the trailer, that it was not a Clawges trailer, but belonged to Beatty since he could read that name on the back of the trailer; there was one light burning on the trailer, a directional signal; and the unit was parked as close to the curb as it could safely

"set". He also testified that, but for one car, his service station area was empty and that the tractor-trailer could have parked there.

W. H. Kelly, an automobile and marine dealer, testified that: He was proceeding to Morgantown and passed the scene of the accident immediately after it happened; he was following a boat trailer, on which the lights were dim, for the purpose of preventing any other driver from running into it; the defendants' trailer was parked "right close to this large iron fence" on the right side of the road; he saw no lights whatsoever burning on the trailer; there was nothing to prevent him from seeing a light had there been any; and he has seen three cars passing abreast on that road.

A Mr. Pancoast testified that he passed the parked tractor-trailer at approximately 5:30 P.M.; it was then dark enough to require lights; his speed was not more than 25 miles an hour; there were no lights on the rear of the trailer; and that the tractor-trailer "had the right hand of the main road blocked, and if there had been another car coming,—I was driving along there and I seen it in time, and I just swerved, and there was no other car coming, so I got around all right."

Oval Marshall testified that: He was in plaintiff's office when plaintiff was ready to close up; he proceeded out to "Mile Ground"; the tractor-trailer was parked in total darkness; there were no taillights burning on the trailer; his headlights were on and he was proceeding at approximately 40 miles an hour; that, "we come to Garrison's Service Station, and just as we went through out of the bright lights, and there was that tractor-trailer setting, and I seen it just in time to swerve around the truck. * * *"; and that he could not have stopped after first seeing the trailer.

One Cosner testified that: He was waiting at a street intersection in Morgantown when he saw plaintiff's automobile go by; he recognized plaintiff as he went by and fell in behind him; his speed was between 20 and 30 miles

an hour, which was sufficient to maintain the distance of 3 or 4 car lengths between the plaintiff's automobile and his; as plaintiff passed the service station, a car approached in the other lane; the headlights of this car blinded him and he slowed down; he then saw sparks fly from plaintiff's automobile and stopped his car; he saw no lights on the trailer before the accident; and, after the accident, he examined the tractor-trailer thoroughly and found no lights burning until he wiped the mud from the directional signal, and discovered that it was burning.

Another witness, Justus, testified that: He came upon the accident shortly after it happened; Cosner's car was the first car behind the wreck; and, shortly before coming up to the scene of the accident, he had passed a car approaching in the other lane, the lights of which had blinded him.

The deputy sheriff, who investigated the accident, arrived at the scene shortly after the collision occurred. He testified that: At that time, no lights were burning on the trailer; there were no flares out; the truck was parked in a shadow, three feet to the right of the center line; and that the aluminum body of the trailer, because of the road dirt thereon, blended with the macadam surface of the highway.

The plaintiff testified that: As he approached the service station "I was going approximately twenty-five miles an hour. I had known that it was bad, and noticed the condition, and it was hard driving; and I had noticed that it was around twenty-five miles an hour, because the weather was bad, and your view was obstructed very easily that evening."; "the first thing I noticed, I was driving along and I noticed a car coming in the opposite direction, and as he got closer it kind of blinded me, or obstructed my view, and just as I got at the service station, why just as I was passing the service station, just seems as though something gray, just all at once I went right into a dark place, just something gray flashed and hit me in the face, and that was it; that is the last I remember."; "* * * I was

coming nearer the car all the time. It obstructed my view, or got brighter; the lights got brighter all the time. It was just about the time the car passed me was when I noticed something, or something gray just like a blank hit me, and that is the last I remember."; if the trailer had any lights on it, he should have seen them; and that he doesn't think he would have had time to put on his brakes, or stop after he saw the gray object. On cross-examination, he stated that, with his headlights, he could have, on that night, seen a distance of from 45 to 60 feet, if the car had not been approaching from the other direction.

Exhibit No. 2 is a statement, purportedly made by the plaintiff two days after his release from the hospital, which plaintiff denied seeing previous to the trial, but did not deny that the signature thereon was his, which recites: "* * * I was travelling at a speed of about 40 m. p. h. following a pick up truck going in the same direction, following this pickup truck 3 or 4 car lengths to the rear. While travelling in this manner the pick-up truck suddenly swerved to the left and continued on and I unexpectedly came upon a tractor-trailer parked in my lane on the highway, this rig stopped going the direction I was travelling in. When I first saw the back end of the trailer I was about 3 or 4 car lengths away. I hit my brakes and what happened after that I do not know."

The evidence clearly shows that the driver of the tractor-trailer was guilty of negligence in leaving his vehicle upon the paved portion of the highway, under the circumstances, and for the length of time related by the witnesses. That evidence establishes also that such negligence was a proximate cause of the injury to the plaintiff. No further reference need be made to that phase of the case. It is not enough, however, that the defendants' negligence was a proximate cause of the injury to the plaintiff. It must have been the sole proximate cause. This Court has not recognized the rule of comparative negligence. Therefore, we are not at liberty to determine whether the negligence of the defendants was greater or

less than that of the plaintiff, if the latter was negligent. The plaintiff cannot prevail if he was negligent, and his negligence contributed proximately to his injury, in whatever degree he may have been negligent.

That questions of fact are to be determined by juries and questions of law by courts is a fundamental principle of our jurisprudence. In the 1st syllabus point of *Fielder, Admx.* v. *Service Cab Company*, 122 W. Va. 522, 11 S. E. 2d. 115, the rule is well stated: "Before directing a verdict in a defendant's favor, every reasonable and legitimate inference favorable to the plaintiff fairly arising from the evidence, considered as a whole, should be entertained by the trial court, and those facts should be assumed as true which the jury may properly find under the evidence." However, the rule is well established also that where the controlling facts are undisputed and are such that reasonable minds can draw but one conclusion from them, the question of contributory negligence barring recovery is one of law for the Court. *Workman* v. *Wynne*, 142 W. Va. 135, 94 S. E. 2d. 665, citing a long line of cases to the same effect.

Counsel for the defendants strongly urge that this Court's decision in *Darling* v. *Browning, et al.*, 120 W. Va. 666, 200 S. E. 737, and *Divita* v. *Atlantic Trucking Company*, 129 W. Va. 267, 40 S. E. 2d. 324, are controlling of the issue presented in the instant case. The trial court, prior to directing the jury to return a verdict for the defendants, in referring to these cases stated: "In the light of those two decisions I think they are absolutely binding on this court."

The *Divita* case arose as a result of a collision between a taxicab and a truck on a public highway at night. The truck was parked on the paved portion of the highway, at a place where there was room for him to drive the truck off of that portion of the highway, and the plaintiff was a passenger in the taxicab, although being the owner thereof, the negligence of the driver was imputed to the plaintiff, placing the plaintiff in this case and the

plaintiff in the *Divita* case in similar positions as far as the law of the cases is concerned. These facts were related in the opinion in the *Divita* case: "It will be recalled that plaintiff and his driver both stated that the taxi-cab was travelling at a rate of speed of from twenty to twenty-five miles an hour, although each admits that the weather conditions were such that visibility was limited to approximately twenty or twenty-five feet. Furthermore, each admits that at that rate of speed, the driver did not have sufficient control over his vehicle to avoid colliding with defendant's truck when its presence came within his range of vision. Both men testified that when they did see defendant's truck it was too late for Griffith to avoid hitting it.* * *" The facts in that case further show that the defendant's truck was stopped at the place where it was struck because of a minor collision a short time before with another truck travelling in the opposite direction, and that the truck drivers had exchanged information for the purpose of making reports of the accident. The Court said in the opinion: "* * * Therefore, we are called upon to ascertain if plaintiff and his driver were guilty of negligent acts 'without which the accident would not have occurred.' We think that under the circumstances stated above, they were guilty of such acts." The 4th syllabus point of the *Divita* case reads as follows: "The operation of a motor vehicle at night, when visibility is obscured by mist and other weather conditions, at such rate of speed that the operator thereof could not stop or control the same within the range of his vision ahead, as a matter of law constitutes negligence proximately contributing to an injury resulting from a collision with another vehicle stopped on the right side of the paved portion of the road."

The *Darling* case is a guest action against the driver of an automobile in which she was a passenger, and the owner of a truck that was parked on a street in the City of Huntington. Her injuries resulted from her driver striking the rear end of the parked truck. The defense was that the driver of the passenger automobile was

blinded by approaching headlights, and was unable to see the truck in time to avoid the collision. The 2nd syllabus point of the *Darling* case reads: "In the exercise of reasonable care, a motorist, temporarily blinded by the lights of an approaching vehicle, must use caution commensurate with the situation." In the opinion, the Court said: "* * * Corrie [one of the defendants] rejoins that at the scene of the accident, a steady stream of cars was coming toward him and that the headlights from the cars blinded him to the extent he did not see the truck. Further, he testified: 'I don't know how far I traveled between the time I first saw those lights and I hit the truck. But at the time these lights were shining in my eyes the accident happened almost instantly.' He admits that immediately before striking the truck his automobile was moving at the rate of about thirty miles per hour." "It is an accepted mandate of law that, in the exercise of reasonable care, a motorist, temporarily blinded by the lights of an approaching vehicle, must exercise caution commensurate with the situation in order to avoid injury to the person or property of others. * * *", citing cases and other authority. The Court further stated: "A motorist who does not reduce the rapid speed of his automobile, though he be temporarily blinded by approaching headlights, and, in such circumstances, inflicts injury on another, must be taken to have assumed the risk that just that thing might happen. * * *" This further statement, by way of dictum, is contained in the opinion: "A case may arise where injury resulted solely from a sudden emergency caused by the flashing of light into a driver's eyes, and a jury would be warranted in relieving him from responsibility, there being no lack of reasonable care on his part. * * *"

Counsel for the plaintiff rely upon the case of *Fleming, Executor* v. *Hartrick*, 100 W. Va. 714, 131 S. E. 558, the 3rd syllabus point of which reads as follows: "The general rule requiring the driver of an automobile to maintain a speed sufficiently slow to have such control of it that he can stop it within the distance in which he can plainly see an obstruction of danger, does not apply to a case

where a dangerous situation which he has no reason to expect suddenly appears in front of his car." In that case, a pedestrian suddenly stepped into the path of an approaching automobile, the driver having been blinded by lights of another vehicle. The 3rd syllabus point in the *Fielder* case, *supra,* is of similar import: "A person using a public road has a right to assume that those likewise using the road will use due care." Both cases are apparently based upon *Tochek* v. *Transport Co.,* 109 W. Va. 20, 152 S. E. 776. However, in the *Divita* case, the Court, in distinguishing the cases, stated: "* * * A person operating an automobile in a public highway, exercising reasonable care, may assume that others using the highway will also act with reasonable care; and he is not negligent in acting accordingly. Others may assume the same of him. He has a right to assume that the driver of other vehicles will observe the law of the road, and he is not guilty of contributory negligence in acting upon such assumption, unless he has knowledge to the contrary. * * *", quoting from *Tochek* v. *Transport Co., supra,* and continued: "The application of this doctrine is predicated on the proposition that plaintiff was exercising reasonable care in the operation of his vehicle, and, but for the negligence of the defendant, the accident would not have occurred. * * *"

In determining whether the plaintiff was guilty of negligence contributing proximately to his injury, we must consider the evidence adduced in his behalf as a whole, and not only such portions of it as are most favorable to him. Particularly is he bound by his own testimony. The owner of the service station testified that sufficient light was emanating from the area so that he could read the word "Beatty" on the back of the parked trailer truck. The witness Cosner testified that although he was only three or four car lengths behind the plaintiff, and travelling at the same rate of speed, he was able to stop his automobile following the collision before it struck plaintiff's car, even though he, Cosner, was blinded by the lights of the same automobile which affected the vision of the plaintiff. Cosner states that when his vision was

affected by the approaching lights, he lessened his speed, but no where in his testimony does the plaintiff state that he took similar precaution. The plaintiff admits that he could see for a distance of forty-five to sixty feet in front of his automobile under the prevailing weather conditions, and if he had not been blinded by the lights of another automobile he could have stopped after observing the parked trailer truck if he was keeping a proper lookout. If he was blinded by the lights of an approaching automobile, he should have reduced his speed. By his own testimony, the plaintiff has placed himself in a position where he was guilty of negligence which contributed proximately to his injury in view of the holdings of this Court in the *Divita* and *Darling* cases.

The judgment of the Circuit Court of Monongalia County upon the directed verdict in favor of the defendants will be affirmed.

*Affirmed.*

GIVEN, JUDGE, dissenting:

In my view, the holdings in the *Divita,* the *Darling* and the *Fleming* cases are unreasonably extended by the decision in the instant case. In each of those cases, the question of the existence of contributory negligence, as a matter of law, was not considered by the Court until after verdict, until after plaintiff had made a prima facie case. Of course, if the evidence of plaintiff, in a proceeding such as the instant one, clearly establishes contributory negligence on the part of plaintiff, he is not entitled to recover and a directed verdict against him would be warranted. Nevertheless, the decision in the instant case demonstrates the too ready action of this Court in substituting its finding of facts for that of a jury.

The plaintiff's evidence establishes that immediately before the collision, the headlights of an oncoming automobile blinded plaintiff so as to make it probably impossible for him to have observed the parked truck in time to have avoided the collision. Up until that time

there is no basis in the evidence for saying that plaintiff was, in any manner, negligent. There is no indication in the evidence of plaintiff that he anticipated, or should have expected, the blinding effect of the headlights of the approaching automobile before they came from behind the parked truck. A reasonable inference, or at least one a jury should have the right to consider, is that the lights of the approaching automobile had no such blinding effect on plaintiff until after the beams therefrom had come from behind the illegally parked truck. Nor is there the least indication in the evidence that after defendant was so blinded he had sufficient time to have stopped, or to have otherwise avoided the collision. Plaintiff testified to the effect that immediately before the collision "something gray just hit me in the face"; and that "Right when I saw it, I was right on it, and that was it". Plaintiff was an experienced driver, traveling on his own side of the road at the time, and driving at a reasonable speed, considering the weather and road conditions. Of these facts there is no dispute. Such facts, it seems to me, clearly distinguish this case from the cases cited by the majority. The fact that others who were not in the position of plaintiff, and who were not blinded by headlights, were able to observe the illegally parked truck, should not preclude recovery. At least, a jury should be given an opportunity to say whether plaintiff acted in a negligent manner. The decision of the Court, in my opinion, unwarrantedly releases from liability a person who admittedly was negligent and whose negligence undoubtedly proximately contributed to the injury of a person having a right to use the highway. The illegal parking of the truck was not only a violation of the road laws but was contrary to a practice which those using the highway had a right to expect and depend on.

The distinguishing features of a case such as the instant one were carefully alluded to in the *Darling* case in this language: "* * * A case may arise where injury resulted solely from a sudden emergency caused by the flashing of light into a driver's eyes, and a jury would be war-

ranted in relieving him from responsibility, there being no lack of reasonable care on his part. But, in this case, the jury considered that the defendant Corrie was not exercising reasonable care. The evidence justified the verdict against him." In *Tochek* v. *Monongahela Transport Co.*, 109 W. Va. 20, 24, 152 S. E. 776, the Court quoted with approval from Berry on Automobiles (6th Ed.) vol. 1, §225, as follows: "* * * A person operating an automobile in a public highway, exercising reasonable care, may assume that others using the highway will also act with reasonable care; and he is not negligent in acting accordingly. Others may assume the same of him. He has a right to assume that the drivers of other vehicles will observe the law of the road, and he is not guilty of contributory negligence in acting upon such assumption, unless he has knowledge to the contrary". The same warning is carried into the opinion in the *Divita* case. A plaintiff should not be denied the right of recovery where he was prevented from discovering the dangerous condition created by the negligence of a defendant, for which condition he was in no manner responsible.

Believing that plaintiff has been unwarrantedly denied a jury trial, I respectfully dissent.