ALBERT SMITH *v.* C. B. SMITH *et al.*

(No. 9339)

Submitted September 29, 1942. Decided November 4, 1942.

*John J. Yankiss,* for plaintiff in error.
*William Bruce Hoff* and *George Shedan,* for defendant in error.

FOX, PRESIDENT:

The plaintiffs in error, C. B. Smith and Harriett Lemon, complain of the action of the Circuit Court of Wood County in entering judgment against them, based on a verdict of a jury directed by the court, for the possession of one yellow and white Guernsey cow and one bluish roan Durham Guernsey cow, each of the value of $150.00, and an alternative judgment of $300.00 in the event recovery of the two cows could not be had. Said judgment was entered on the 12th day of November, 1941, after a motion to set the said verdict aside had been overruled, in an action of detinue in which Albert Smith was plaintiff, C. B. Smith, original defendant, and Harriett Lemon, a petitioner, claiming the property involved in the action.

On the first day of October, 1938, Harriett Smith sold to her two daughters, Harriett Lemon and Hazel Lyons, four heifers and certain household and kitchen furniture, this sale being evidenced by a bill of sale, signed and acknowledged by Harriett Smith, and recorded in the office of the clerk of the County Court of Wood County on June 16, 1939. The evidence shows that the four heifers covered by said bill of sale consisted of one bluish roan Durham and Guernsey, one yellow and white Guernsey, and two others referred to as yellow twins. At the time of this sale, the heifers were about six months old, and it appears that they were kept on or about the farm of J. H. Smith, the father of Harriett Lemon and Hazel Lyons, until some time in October, 1939, when they were removed to a farm either owned or leased by their brother, Albert Smith. They remained on the Albert Smith farm until January 31, 1941, and in the meantime, had become fresh and were thereafter referred to as cows. On the date last mentioned, two of the cows, namely, the bluish roan Durham and Guernsey and the yellow and white Guernsey, were taken from the Albert Smith farm to a farm owned by C. B. Smith, another brother. Thereupon, Albert Smith, on the same date, instituted his action of detinue before a justice of the peace, seeking the possession of the two cows of which he had been dispossessed, and a summons issued was made returnable on the 7th day of February, 1941, and was duly served on the defendant named therein. The plaintiff executed a forthcoming bond, and the possession of the property in controversy was delivered to him thereunder. Acting under Code, 50-10-1, 2, Harriett Lemon appeared in the detinue action and asserted her title to the two cows described in the summons, and asked that an issue be made up as between her and the plaintiff to try her right to the said property. A jury trial was had before the justice, resulting in verdict and judgment in favor of Harriett Lemon and against the plaintiff. This judgment was appealed to the Circuit Court of Wood County, and a trial had in May, 1941, resulting in the failure of the jury to agree on a verdict. A second trial was had, beginning on October 22, 1941, and continued

over a period of three days. In this trial, Harriett Lemon was permitted to assume the position of plaintiff, and to introduce her testimony first in point of time, and at the conclusion of the same, counsel for plaintiff in the original action moved to exclude her evidence and for a directed verdict in his favor. This motion was overruled, and evidence supporting the claim of Albert Smith, together with certain rebuttal testimony, was then introduced. At the conclusion of all the evidence, counsel for Albert Smith moved for a directed verdict in his favor, which the trial court later sustained, and upon which the judgment aforesaid was entered.

At the beginning of the trial now under review, counsel for the respective parties undertook to clarify the situation as to the real issue involved, and the parties affected thereby. It was then determined that the sole and only issue was the right of possession to the two cows in question, and that the parties interested were the petitioner, Harriett Lemon, and the original plaintiff, Albert Smith. A motion was then made to exclude all witnesses from the courtroom during the trial, and this motion was sustained, and under it, over his objection and exception, C. B. Smith, the defendant in the original detinue action, was excluded, and was not permitted to participate in the trial, although his right to do so was again asserted on the following day. Notwithstanding this, the trial court entered a judgment, not only against Harriett Lemon, but against C. B. Smith, as well.

The trial court in announcing its decision on the motion to direct a verdict, and in its instructions to the jury to find a verdict in favor of Albert Smith, based its action on its belief that if the jury were to return a verdict in favor of the petitioner, Harriett Lemon, the court, under all the evidence, would be obliged to set aside the same. There can be no criticism of the court's action if it believed that the evidence introduced by petitioner was insufficient to sustain her claim to the property involved, and that if a verdict were rendered in her favor it would have to set it aside. This is one of the well recognized tests which trial courts should apply upon motions of this character.

The sole and only matter of review is whether, taking the evidence as a whole, it presented a situation where, if the case had been presented to the jury and a verdict returned in favor of Harriett Lemon, the trial court would have been warranted in setting it aside.

As stated above, there is no dispute as to the original ownership of Harriett Lemon and Hazel Lyons to the four heifers sold to them by their mother, Harriett Smith, on October 1, 1938; and there is no dispute that the heifers were delivered to Albert Smith in the fall of 1939. The two points of dispute are these: First, did Harriett Lemon and Hazel Lyons agree upon a division of the heifers in kind, whereby Harriett Lemon became the sole owner of the two heifers, now cows, involved in this controversy? And, second, whether Albert Smith, in whose favor judgment was rendered, purchased the four heifers from Harriett Lemon and Hazel Lyons. ˙

On the first point of dispute, Harriett Lemon, her husband, T. T. Lemon, and her two sons, Burl Lemon and Albert Lemon, then aged fourteen years and thirteen years, respectively, say that shortly after the date of the bill of sale, there was an agreement between Harriett Lemon and Hazel Lyons by which Harriett. Lemon was to take the bluish roan Durham and Guernsey heifer and the yellow white Guernsey heifer, and that Hazel Lyons was to take the yellow twin heifers. Hazel Lyons says that no such division was ever made, and that the sale of the heifers, which, she says was thereafter made to Albert Smith, was made by her and Harriett Lemon in undivided interests.

On the second point of dispute, Albert Lemon says that he purchased the four heifers from Harriett Lemon and Hazel Lyons; that Harriett Lemon proposed to sell her interest in the heifers, and that he refused to purchase it unless he could secure Hazel Lyons' interest therein; that he paid Hazel Lyons $100.00 for her interest, and that he paid Harriett Lemon $100.00 for her interest by payments to Harriett Smith, her mother, then living but now dead, in settlement of a debt due the mother from Harriett Lemon, and that in addition, he furnished her twenty-five

bushels of corn. His claim of purchase is corroborated by the testimony of J. H. Smith, his father, by his wife and by Hazel Lyons. Harriett Lemon denies that she ever sold the heifers, or any interest in them, to Albert Smith, or that she owed her mother any sum of money. She explains the delivery of the possession of the heifers to Albert Smith by saying that they were turned over to him to keep during the winter, and there is some suggestion, if not a direct claim, that Albert Smith agreed to keep these heifers as his contribution for the care of his mother, who was being looked after by Harriett Lemon and Hazel Lyons, they living in the immediate vicinity of Harriett Smith's home. To support her claim of the ownership of the two cows, we have the testimony of Curtis H. Smith, Emmett Kaplinger, Noble Wells and Huldy Wells, all of whom stated that Albert Smith admitted to them seperately, or stated in their presence, that the cows belonged to Harriett Lemon, and some of them testified that he made the statement that she could get them any time she wanted them. Robinson Smith, another brother, testified that in November, 1940, he heard his sister, Harriett Lemon, say to her brother, Albert Smith, "I want my two heifers back", but he does not state what response, if any, Albert Smith made to this request. S. L. Harris, a witness introduced by Albert Smith, testified that in the early part of November, 1939, he heard Noble Wells say that Albert Smith had bought the four heifers from his sisters, Hazel Lyons and Harriett Lemon, and that he had paid for them the sum of $200.00. This, of course, was introduced for the purposes of contradiction.

It will appear from the foregoing that there was sharp conflict in the testimony of witnesses bearing upon the two vital questions involved in the trial of this action. In the first place, the right of the petitioner, Harriett Lemon, to the possession of the two cows depends on whether there was a division in kind as between her and her sister, Hazel Lyons, whereby she became the sole owner of the two cows, the possession of which is now disputed. Upon this question, the evidence is in hopeless conflict. Considering only the number of witnesses who testified on both sides

on this particular point, the evidence preponderates in favor of Harriett Lemon, although we do not mean to treat this as decisive, or to say that a jury would not have a right to believe or disbelieve any witness who testified on this point. The next point in dispute is whether Albert Smith purchased these heifers or took them under some character of bailment. Albert Smith says that he did purchase the heifers, and there is evidence to support his claim. Harriett Lemon says he did not purchase her heifers, and there is evidence that after the date when the heifers were supposed to have been purchased, Albert Smith, on many occasions, stated that the heifers belonged to his sister. The weight and credibility of witnesses is a matter for jury determination, and courts are not warranted in disturbing jury verdicts, except in cases where the jury has plainly reached an incorrect conclusion. There is, and can be, no dispute as to the rule applicable to such cases, and citation of authority is unnecessary. Applying this rule, we cannot agree that upon the evidence presented at this trial, if there had been a verdict in favor of Harriett Lemon, the court would have been warranted in setting it aside. The evidence is in such conflict that a verdict of the jury, for either of the parties, should not have been disturbed. This being true, the action of the court in directing a verdict for the plaintiff and against Harriett Lemon cannot be justified, though we give full consideration to the weight which should be accorded the action of the trial court which has heard the testimony and observed the demeanor of witnesses. We have here a case in which we have a right to assume that the testimony of witnesses, especially the brothers and sisters who were involved in this unfortunate litigation is entitled to equal weight and consideration. Three brothers and two sisters and a father, all of the same family, expressly contradict each other on vital questions at issue. It is, in our opinion, a case where a jury should have been permitted to pass upon the disputed questions of fact. While it is a matter of regret that this unfortunate litigation, already pursued to the extent where costs incurred far exceed the value of the property involved,

should be continued, we cannot ignore the well established rule that factual matters involving highly conflicting testimony, must be submitted to a jury, in cases where a jury is not waived.

There is another rule that should have been applied in this case, and that is that on a motion to direct a verdict, all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed. On the motion to direct a verdict, this rule should have been applied, and it furnishes another reason why the action of the court cannot be sustained. We do not mean to say that when such a motion was made, the court should have accepted as true the evidence in favor of Harriett Lemon, but we do say that the evidence in its entirety should have been considered from the viewpoint most favorable to her. This rule, of course, would not apply in a case submitted to a jury for decision. On the whole, we are of the opinion that the court erred in sustaining plaintiff's motion to direct a verdict.

The exclusion from participation in the trial of C. B. Smith, the defendant in the original detinue action, is not important in view of the course the case must take. However, it is not improper to say that if the plaintiff, Albert Smith, sought a judgment against C. B. Smith, and the court entered such a judgment, he should have been permitted to sit in the trial of the case for the purpose of protecting his interest. The record shows that at the beginning of the trial, it was sought to eliminate C. B. Smith from the case, and it was tried upon that theory. Smith, being a witness, was excluded along with all other witnesses, and properly so; but it was, we think, improper, after this action was taken, to bring him back into the case after all of the evidence had been introduced and enter judgment against him. If, upon the new trial, recovery is sought against C. B. Smith, he should be permitted to sit in the trial and protect his interests.

An order will be entered reversing the judgment of the Circuit Court of Wood County, setting aside the verdict and remanding the case for a new trial.

*Judgment reversed; verdict set aside; case remanded.*