WELDON DEAN WAGER

*v.*

LARRY DOUGLAS SINE

(No. 13229)

Submitted September 19, 1973. Decided December 21, 1973.

*William L. Jacobs and Louie S. Davitian* for appellant.

*J. S. Francis* for appellee.

SPROUSE, JUSTICE:

This case is before the Court upon an appeal from the final judgment of the Circuit Court of Wetzel County in an action instituted by Weldon Dean Wager, as the

plaintiff, against Larry Douglas Sine, as the defendant, to recover damages for personal injuries. It arises out of an accident wherein a truck driven by the plaintiff collided with a severed telephone pole which was lying across State Route 2 in Wetzel County. An automobile driven by the defendant, Larry Douglas Sine, had struck the telephone pole, severed it and knocked it across the highway. The plaintiff truck driver claims that his injuries were the result of the defendant's negligence in striking and severing the pole shortly before the truck impact.

At the conclusion of all of the evidence, the trial court directed a verdict for the defendant and, in a subsequent memorandum opinion, indicated the ruling was based solely on the contributory negligence of the plaintiff. In the trial judge's view, the plaintiff was guilty of negligence as a matter of law, in driving his truck in such a manner that he was unable to bring the truck to a stop before striking the telephone pole.

The only issue in the case is whether the trial court erred in directing a verdict in favor of the defendant and not permitting the issue of contributory negligence to be decided by the jury. The question presented relates solely to liability, therefore, it is not necessary to discuss the medical evidence. Since the issue for resolution requires a review of the evidence, however, it will be necessary to detail at length the facts concerning the accident.

On November 3, 1967, the defendant Sine was proceeding south on State Route 2 in Wetzel County in the vicinity of Paden City. Earlier in the evening, at approximately 6:00 p.m., he had visited a local tavern and had consumed what he characterized variously as a "couple bottles of beer" or "two or three bottles of beer".

He thereafter attended a football game and engaged in other social activities prior to returning south on Route 2

towards Paden City. He testified that the speed of his automobile was 55 or 60 miles an hour.

The portion of the highway where the accident occurred was in bad condition and had been in a bad condition for a number of years. The highway was rough in this location because the pavement was frequently repaired— apparently due to some defect in the structure of the highway.

The defendant was aware not only of the bad condition of the highway, but he was aware of a large "hump" at one location. He testified that, as he approached this hump, still maintaining a speed of 55 to 60 miles an hour, he pulled his vehicle to the extreme right of the southbound lane to avoid the hump. His automobile left the highway and went onto the berm, which was soft and dropped to a depth of four inches. The defendant attempted to straighten his vehicle back on the highway, but this caused the vehicle to go into a spin. The defendant did not know how many times his vehicle spun around, but it crossed the highway severing the telephone pole located on the berm off the northbound lane of the highway. The pole was completely severed and fell across part of the northbound lane and all of the southbound lane. After striking the pole, the defendant's vehicle came to rest close to the stub of the severed pole adjacent to the northbound lane of traffic.

The left side of the defendant's automobile was damaged and the defendant's leg was pinned between the door and the steering wheel. This, added to his dazed condition, prevented him from getting out of the automobile.

Shortly after the defendant's accident, two apparently impartial witnesses, John Booher and Wayne Sydenstricker, approached the accident scene in Booher's automobile. The Booher vehicle was proceeding north on the highway when the two men observed Sine's wrecked vehicle. They were approximately 350 to 400 feet south

of the Sine vehicle when they first saw it. Booher stopped his vehicle approximately 100 feet south of the Sine vehicle, leaving his two left wheels on the hard surface of the highway and the two right wheels on the berm in order that he would not be stuck in the soft berm. Either one or both of these men went to Sine's assistance.

Booher testified that he remembered passing a tractor-trailer truck a short distance south and, having by this time seen the pole lying across the highway, became concerned for the truck driver. Booher left his vehicle and began waving his arms to signal the oncoming truck driver. Both Booher and Sydenstricker testified that the headlights and taillights of the Booher car were burning, and that the left turn signal was flashing.

According to Sydenstricker and Booher, they had passed the tractor-trailer truck approximately one-half to a mile south of the Sine accident. At the time they overtook the truck, Booher was traveling at an estimated speed of 60 to 65 miles an hour. Sydenstricker said the truck was travelling at an estimated speed of 55 miles an hour. Booher stated that, as he left his vehicle to wave at and flag the oncoming truck, he first saw the truck approaching at about 250 yards to the south, and that the lights of the truck were shining straight towards him. He said the truck veered to the left side of the road, proceeded past him and struck the pole.

The plaintiff's testimony on the facts material to the principal issue was completely contradictory to the testimony of Booher. The plaintiff, Wager, stated that he was travelling north on State Route 2 at approximately 40 miles per hour. It was raining and dark. He saw a dark object to his right, causing him to pull his truck to the left and slow his vehicle. The plaintiff stated that there were no lights on any vehicle in the area, and he saw no one waving and flagging traffic. His testimony was that he was 20 to 30 feet from the pole when he first observed it. He slowed the truck again by changing his gears downward, and at the same time applying his brakes,

first to the trailer and then to the tractor. After applying his brakes, he was travelling at a rate of speed of 15 to 20 miles an hour at the time of the collision with the pole. He contends he was thrown around in the truck and was injured as a result of the impact.

He said the pole was "black, dark". The dark object he had seen on the right was the parked car. He was looking straight ahead and could see north, but at the same time could observe the car. He had tried his lights both on low beam and high beam before getting to the point of the pole. At the time he approached the pole, according to Wager's testimony, his lights probably illuminated to a distance of 150 feet. He said they would have shone farther had it not been for the rain. He said the pole completely covered the left half and most of the right half of the highway as he proceeded north.

Booher was the witness who testified that he stayed by the car on the road, waving and flagging the truck. Plaintiff's counsel on cross-examination attempted to establish that both Booher and Sydenstricker were by the Sine vehicle attempting to help Sine, therefore, making it impossible for Booher to have been on the road flagging at the time the truck approached. Booher told of a conversation which took place between Sydenstricker and the defendant, and as a matter of fact, he had reported this conversation prior to trial in the letter to plaintiff's counsel. He testified initially that the conversation had been reported to him by Sydenstricker. He then stated that at least part of the conversation occurred after Sine was in Booher's car, and finally stated that he did not remember where the conversation took place. Booher continually maintained, however, that he was by the roadside waiving when the truck drove by.

In this same connection, the defendant testified on direct examination that either Booher or Sydenstricker helped him out of the car, but not both of them. On cross-examination he admitted making a statement on

pre-trial deposition that both had been present when he was taken from the car. The defendant, however, despite this admission, maintained on cross-examination that only one of them helped him from his vehicle, but that the two young men took him to the hospital in their automobile.

In addition to these witnesses and medical witnesses, the two state policemen who investigated the accident testified. Their testimony consisted principally of outlining the physical circumstances concerning the location of the pole, the place where the vehicles came to a stop, distances, etc. The truck stopped with its front wheels directly over the pole.

One of the troopers testified that it was raining very hard by the time he arrived on the scene of the accident at 10:30 p.m. The state trooper also testified as to the rough condition of the road and to the fact that it had been in poor condition for a number of years. Both testified that it was dark, the road was wet, and that the occupants of the vehicles had been removed by the time the policemen arrived at the scene of the accident.

At the beginning of the trial, the jury was taken to the scene of the accident for a view and the court pointed out to them the location of the accident, the severed pole and similar physical evidence.

As the trial court stated in its Memorandum Opinion, the rules concerning when a verdict should be directed in favor of one of the parties is easy to state and the question has been decided many times in West Virginia. As was stated, however, in a recent decision of this Court, the decisions "do not synthesize into a neat, syllogistic pattern. They are at best general rules which do not provide a specific formula, rather they provide broad guidelines" on which the evidence must invariably be reviewed both by trial courts and appellate courts. *Jones, Inc. v. W. A. Wiedebusch Plumbing and Heating Company*, 157 W.Va. 273 (1973).

A directed verdict for the defendant is justified where, "if the case were permitted to go to the jury upon the plaintiff's evidence, the same would not justify a verdict for the plaintiff, and if such a verdict were returned, the same would have to be set aside". *Porter v. South Penn Oil Company,* 125 W.Va. 361, 362, 24 S.E.2d 330, 331. See also *Lightner v. Lightner,* 146 W.Va. 1024, 124 S.E.2d 355; *Petros v. Kellas,* 146 W.Va. 619, 122 S.E.2d 177; *McMicken v. Province,* 141 W.Va. 273, 90 S.E.2d 348; *Adkins v. Aetna Life Insurance Company,* 130 W.Va. 362, 43 S.E.2d 372.

It is also true that "[w]hen the evidence, though conflicting as a whole, embraces uncontradicted facts and circumstances which cause the case to turn in favor of one of the parties, so that a verdict adverse to such party can not stand, the court should direct a verdict in his favor". *McCoy v. Cohen,* 149 W.Va. 197, pt. 5 syl., 140 S.E.2d 427. See also *Thomas v. Ramey,* 156 W.Va. 191, 192 S.E.2d 873. In addition, it has been held that "[w]hen the material facts are undisputed and only one inference may be drawn from them by reasonable minds the questions of negligence and contributory negligence are questions of law for the court". *Graham v. Crist,* 146 W.Va. 156, pt. 3 syl., 118 S.E.2d 640. See also *Kidd v. Norfolk & Western Railway Company,* 156 W.Va. 296, 192 S.E.2d 890; *Daugherty v. Baltimore and Ohio Railroad Co.,* 135 W.Va. 688, 64 S.E.2d 231.

While these and many other cases can be cited to support the positive argument for directing a verdict in favor of the defendant, there are just as many cases setting guidelines as to when a verdict should not be directed. Among them is the case of *Davis v. Sargent,* 138 W.Va. 861, 78 S.E.2d 217, which holds in the third point of the syllabus that "[t]he questions of negligence and contributory negligence are for the jury when the evidence is conflicting or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them." To the same effect see *Thomas v. Ramey, supra; Campbell v. Campbell,* 146 W.Va. 1002,

124 S.E.2d 345; *Metro v. Smith,* 146 W.Va. 983, 124 S.E.2d 460.

In *Campbell* the Court held: "It is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed by this Court." *Campbell v. Campbell, supra* at 1012, 124 S.E.2d at 351. See also *Kidd v. Norfolk & Western Railway Company, supra; Skeen v. C and G Corporation,* 155 W.Va. 547, 185 S.E.2d 493; *Davis v. Pugh,* 133 W.Va. 569, 578, 57 S.E.2d 9, 14.

As was stated in *Jones v. W. A. Wiedebusch Plumbing and Heating Co., supra,* the task of the appellate court is inevitably to review the evidence against the above guidelines. In this instance, it is clear that there was evidence on which a jury might find primary negligence on the part of the defendant, however, that is not at issue. The trial court directed the verdict for the defendant solely on the basis of contributory negligence. We need only to look at the evidence concerning the plaintiff's conduct at the time of his collision with the telephone pole.

One witness, Booher, testified that the lights of the Sine automobile were burning; that the blinker lights of the Booher vehicle were flashing; that Booher stood by the road waving at the plaintiff; and that he first saw the plaintiff approaching in his truck approximately 250 yards south of the accident. Sydenstricker's testimony was that the plaintiff was travelling at a speed of 55 miles per hour prior to the accident.

The plaintiff, however, denied that there were any lights on either of the vehicles; that all he saw by the side of the road was a dark object; that no one was waving or flagging at him as he passed that spot; and that he was only going 40 miles per hour. According to the plaintiff, the pole was black, dark; he did not see the pole across the road until he was 20 or 30 feet from it; and he slowed down to 15 or 20 miles an hour before striking it.

The plaintiff, of course, is competent to give testimony in his own behalf. *Board of Education v. Harvey,* 70 W.Va. 480, 74 S.E. 507; *Hefflebower v. Detrick,* 27 W.Va. 16; Code, 1931, 57-3-1, as amended. It is the province of the jury, as the trier of the facts, to determine the weight and credence to be given such testimony. *Swallow v. McCoy,* 191 Kan. 386, 381 P.2d 350. See *Lawson v. Town & Country Shops, Inc.,* 159 Cal. App. 2d 196, 323 P.2d 843; *State v. Price,* 96 W.Va. 498, 123 S.E. 283. *Perry v. Scott,* 134 W.Va. 380, 384, 59 S.E.2d 652, 654, announced another important rule in this respect:

> "Under this evidence was the trial court justified in directing the jury to return a verdict for the defendant? In answering this question we must look only to that part of the evidence which is favorable to the plaintiff. Inferences fairly arising therefrom favorable to the plaintiff must be indulged in."

Also see *Smith v. Smith,* 125 W.Va. 24, 30, 22 S.E.2d 647, 650, which states in part: " * * * all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed." See also *Jones, Inc. v. W. A. Wiedebusch Plumbing and Heating Co.,* W.Va. (decided December 11, 1973); *Yeager v. Stevenson,* 155 W.Va. 16, pt. 2 syl., 180 S.E.2d 214; *Walker v. Monongahela Power Company,* 147 W.Va. 825, pt. 3 syl., 131 S.E.2d 736.

In addition to the testimony of these parties, had the case been presented to the jury for decision, the jury could have considered the testimony of the state troopers and the evidence they determined from their view of the scene.

In viewing the plaintiff's evidence in the light most favorable to him and for the purpose of considering whether the court was correct in directing a verdict against him, we must, therefore, assume that the jury could have found that the car by the side of the road was not lit, but appeared to the plaintiff to be merely

a dark object; that there was no one flagging him; and that the jury could have believed his testimony concerning speed, visibility, the color and visibility of the pole, the general visibility, and his actions upon sighting first the car by the side of the road and then the pole.

The truck striking the pole is absolute proof that the plaintiff was not able to bring the truck and trailer to a stop within the distance of his vision permitted by his headlights.

It is a well-established general rule that it is negligence as a matter of law for one to drive a motor vehicle at such a rate of speed that it cannot be stopped in time to avoid an obstruction discernible within the driver's range of vision. 8 AM. JUR. 2d, *Automobiles and Highway Traffic,* Section 720, page 271; Annot., 87 A.L.R. 900. See also 8 AM. JUR. 2d, Section 720 at pages 271-73, wherein it is said:

> "In many cases it has been said that it is negligence or contributory negligence as a matter of law to drive a motor vehicle at such a rate of speed that it cannot be stopped in time to avoid an object discernible within the driver's range of vision, or within the assured clear distance ahead. Independently of statute, when the view of the driver of a motor vehicle is obstructed, whether by reason of a grade or otherwise, the speed of his vehicle should be so reduced that it can be stopped within the distance the driver can see ahead. In application, the rule constantly changes as the motorist proceeds and is measured at any moment by the distance between the motorist's vehicle and the limit of his vision ahead, or by the distance between the vehicle and any intermediate discernible static or forward moving object in the street or highway ahead constituting an obstruction in his path. Such rule requires a motorist in the exercise of due care at all times to see, or to know from having seen, that the road is clear or apparently clear and safe for travel, a sufficient distance ahead to make it apparently safe to advance at the speed employed.

"The rule requiring a motor vehicle to be driven at such a speed as to permit it to be brought to a stop within the range of the driver's vision or within the assured clear distance ahead is applicable at night, as well as in the daytime, and it is then referred to as the 'radius of lights' doctrine. Under such rule, it is negligence or contributory negligence as a matter of law to drive a motor vehicle so fast at night that it cannot be stopped in time to avoid collision with objects within the area lighted by its headlights —that is, within the 'radius' of its lights. The assured clear distance ahead is the limit of the motorist's vision ahead afforded by his lights, in the absence of any intermediate discernible obstruction.

"The 'assured clear distance ahead' or 'radius of lights' rule has been held to apply although the driver's vision has been reduced because of atmospheric conditions or by a hill or curve, or the slippery condition of the highway makes it difficult to stop."

This Court has adhered to the "assured clear distance ahead" rule in a number of cases. In *Ewing v. Chapman,* 91 W.Va. 641, 114 S.E. 158, this Court held that where the plaintiff's vehicle had been driven at such a speed that it could not have been stopped within the distance in which the driver could see an approaching or standing car on the same side of the road because of the density of the fog, the trial court erred in refusing the defendant's pre-emptory instruction of contributory negligence.

In *Fleming v. Hartrick,* 100 W.Va. 714, 131 S.E. 558, a pedestrian stepped into the path of an approaching automobile, the driver having been blinded by the lights of another vehicle. The Court said the general rule requires a driver to maintain a speed sufficiently slow to have such control that he can stop it within the distance he can plainly see an obstruction of danger ahead, but this rule does not apply in a sudden emergency.

The Court has also held that: "The operation of a motor vehicle at night, when visibility is obscured by mist

and other weather conditions, at such a rate of speed that the operator thereof could not stop or control the same within the range of his vision ahead, as a matter of law constitutes negligence proximately contributing to an injury resulting from a collision with another vehicle stopped on the right side of the paved portion of the road." *Divita v. Atlantic Trucking Company,* 129 W.Va. 267, pt. 4 syl., 40 S.E.2d 324. To the same effect see *Wolfe v. Beatty Motor Express, Inc.,* 143 W.Va. 238, pt. 2 syl., 101 S.E.2d 81.

A casual reading of *Fleming* as well as *Divita* and other cases decided in this Court might precipitate an erroneous conclusion that a driver of a vehicle must be able to stop his car within the assured clear distance ahead regardless of his speed and regardless of the surrounding circumstances. The Court, however, did not hold that in any of the cases. *Fleming* held that the general rule requires a driver to maintain a speed sufficiently slow to have such control that he can stop it within a distance "he can plainly see an obstruction of danger". *Fleming v. Hartrick, supra* at pt. 3 syl.

In *Divita,* the Court decided a case involving a vehicle stopped during a foggy night on the paved portion of the road ahead in the same lane of traffic used by the plaintiff. The Court held that "in the circumstances of this case", the operator of the motor vehicle was guilty of negligence proximately contributing to the injury by not operating the automobile at a rate of speed where he could have stopped or controlled the same within the range of his vision on a misty night. In concluding the opinion in *Divita,* this Court announced:

> "We think that it is a sound rule to require the operator of a motor vehicle driven on a public road to have his vehicle under such control that it can be stopped within the distance that the operator can see ahead. *Of course, we do not intend that such rule should apply in every instance, such as where there are sharp curves or other impediments to clear vision,* but in the circumstances of this case observance of such

rule might have prevented the accident." (Italics Supplied.) *Divita v. Atlantic Trucking Company, supra* at 278-79, 40 S.E.2d at 331.

While some courts have adhered to the hard-fast rule that it is negligence as a matter of law to drive a motor vehicle at such a rate of speed that it cannot be stopped within the range of the driver's vision, other courts have grafted qualifications on the general rule. One limitation on the rule is that it does not apply where an ordinary prudent driver under the circumstances would not have been able to see the object in time to stop. For example, where the nature of the object or its condition, such as color, dirt, etc., in relation to the highway affects its immediate visibility, the question of negligence is for the jury. 8 AM. JUR. 2d, *Automobiles and Highway Traffic,* Section 721, page 273. See Annot., 97 A.L.R. 546.

This is the rule in West Virginia. *Divita v. Atlantic Trucking Company, supra; Fleming v. Hartrick, supra.*

The "clear distance ahead" rule is similarly limited by the "sudden emergency" doctrine stated in a number of our decisions:

> "The general rule requiring the driver of an automobile to maintain a speed sufficiently slow to have such control of it that he can stop it within the distance in which he can plainly see an obstruction of danger, does not apply to a case where a dangerous situation which he has no reason to expect suddenly appears in front of his car." *Fleming v. Hartrick, supra* at pt. 3 syl.

See also Annot., 87 A.L.R. 900; Annot., 97 A.L.R. 546 to the effect that the assured clear distance ahead rule does not apply in the case of sudden emergency. See also *Oldfield v. Woodall,* 113 W. Va. 35, 166 S.E. 691; *Graham v. Crist,* 146 W. Va. 156, 162, 118 S.E.2d 640, 644-45 wherein it is said:

> " * * * a person confronted with a sudden emergency which he does not create, who acts according to his best judgment or, because of insufficient time to form a judgment, fails to act in the most judicious manner, is not guilty

of negligence if he exercises the care of a reasonably prudent person in like circumstances."

Viewing the evidence in this case in a light most favorable to the plaintiff, the jury might have believed that the plaintiff under the peculiar circumstances did not see the pole in time to bring his truck to a halt before impact. The jury might also have believed that the circumstances of the previous accident created a sudden emergency for the plaintiff to which he had not contributed and that he exercised the care of a reasonably prudent person in like circumstances. The question of negligence on the part of both the plaintiff and defendant should have been presented to the jury for their decision.

For reasons stated in this opinion, the judgment of the Circuit Court of Wetzel County is reversed, the verdict is set aside and the case is remanded for a new trial.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*