342 S.E.2d 177

**Victor P. ARCURI and Phyllis P. Arcuri**

v.

**The GREAT AMERICAN INSURANCE COMPANY, United States Fidelity & Guaranty Company, Potomac Insurance Company, Henry & Hardesty, Inc., and Bertha Ann Mundy.**

No. 16536.

Supreme Court of Appeals of West Virginia.

March 20, 1986.

**213**

LaVerne Sweeney, Grafton, for appellants.

Alfred J. Lemley, Fairmont, for Great American Ins. Co.

Herbert G. Underwood and Gary W. Nickerson, Steptoe & Johnson, Clarksburg, for USF & G and Potomac Ins. Co.

Frank Sansalone, Fairmont, for Henry & Hardesty, Inc.

Harry Cronin, Fairmont, Mary Lou Hill, Furbee, Amos, Webb & Critchfield, Morgantown, for Bertha Ann Mundy.

McHUGH, Justice:

This case is before this Court upon appeal from the final order entered by the Circuit Court of Taylor County, West Virginia. The plaintiffs below, Victor P. Arcuri and Phyllis P. Arcuri, husband and wife, are the appellants. The defendants below, The Great American Insurance Company, United States Fidelity & Guaranty Company and Potomac Insurance Company (the insurers) as well as Henry & Hardesty, Inc. (the insurance agency) and Bertha Ann Mundy, are the appellees.[1] After opening statements by all parties, the trial court granted the respective motions of the insurers and of the insurance agency for a directed verdict in favor of the appellees. After reviewing the record and the briefs filed in this appeal, we reverse the final order of the trial court and remand for a new trial.

## I

According to the second amended complaint and the opening statement of counsel for the appellants, the facts are as follows. The appellants owned certain real estate near the Town of Grafton, in Taylor County, West Virginia, including improvements thereon in the form of a tavern building (a restaurant and bar), a dance hall building and a dwelling. The appellants purchased fire (and other hazard) insurance on the

1. Bertha Ann Mundy did not file a brief in this appeal. The trial court orally indicated at the time it granted the other defendants' motions for directed verdict that, based upon her oral motion to dismiss made at the same time, it was inclined to dismiss Ms. Mundy as a defendant on the ground of *res judicata.* Nevertheless, the final order entered herein indicates that she remained a party.

tavern and on the dance hall from the three insurers through the insurance agency. The coverage limits on the tavern totalled $11,900.00. The coverage limits on the dance hall totalled $6,000.00.

On August 5, 1976, the appellants entered into a land sales contract wherein the appellee Mundy agreed to buy the appellants' property for $169,000.00, with a $25,000.00 down payment and the balance to be paid in monthly installments of $1,638.78, including interest. Upon payment of the balance in full, the appellants would convey the title to the property to the appellee Mundy.

After learning from the appellee Mundy of the land sales contract, the insurance agency, in August, 1976, issued a purported endorsement to each of the fire insurance policies, whereby the named insured under each of the policies was changed from Victor P. Arcuri to "Victor P. Arcuri and Bertha Ann Mundy, under contract of sale as their interest may appear." According to the appellants, these endorsements were issued without the knowledge or consent of the appellants. The appellants had paid all of the premiums on the policies.

Upon learning of the purported endorsements the appellants, in August, 1976, complained on two occasions to the insurance agency about the addition of the appellee Mundy as a named insured, but their complaints were essentially ignored on the basis that state law purportedly required the addition of Ms. Mundy as a named insured.

On September 1, 1976, the appellee Mundy took possession of the property [2] and immediately opened the tavern for business. The land sales contract required her to purchase and maintain fire insurance on the property, with the appellants as the named insureds. She did not, however, purchase such insurance. On October 31, 1976, the tavern was gutted by a fire. The estimated cost of repair to the tavern and its contents was about $24,000.00 shortly after the fire.[3]

The insurers, within 60 days after receiving proof of loss from the appellants, submitted, to the Clerk of the trial court, checks dated December 30, 1976, totalling $11,900.00 (the policies' limits), made payable to Victor P. Arcuri and Bertha Ann Mundy. Ms. Mundy refused to endorse these checks pending the litigation brought by her concerning her failure to purchase fire insurance. See n. 3, *supra*.

On February 26, 1977, a motor vehicle was negligently driven by an unknown person into the dance hall building, causing

---

**2.** As agreed, the appellants continued to reside in the separate dwelling on the property.

**3.** On November 5, 1976, the appellants notified the appellee Mundy in writing that, in accordance with the terms of the land sales contract, the contract was terminated because she had failed to purchase fire insurance on the property. The appellants shortly thereafter refused to allow Ms. Mundy on the property and, in accordance with the contract, kept the $25,000.00 down payment and the first and only monthly installment of $1,638.78 paid on October 1, 1976, as "liquidated damages" for use of the property. On December 22, 1976, Ms. Mundy brought an action against the Arcuris, in the Circuit Court of Taylor County, West Virginia, seeking either restoration of her rights of occupancy under the contract or return of her $25,000.00 down payment. Based upon her evidence that the Arcuris had told her at the contract signing that they had already purchased fire insurance and that she would be saved that money for the year, the trial court found that the Arcuris had waived the contractual provision requiring Ms. Mundy to obtain and maintain adequate fire insurance on the property.

The trial court also found that the Arcuris knew by August 31, 1976 that Ms. Mundy had not purchased fire insurance but did not complain to her about the same until after the fire occurred two months later. They were, therefore, estopped to enforce the contract and the same was held to be rescinded. By order entered on July 5, 1979, the trial court ruled that the Arcuris were to return the $25,000.00 down payment to Ms. Mundy.

On the Arcuris' appeal to this Court, the trial court's ruling was affirmed. *Mundy v. Arcuri*, 165 W.Va. 128, 267 S.E.2d 454 (1980). This Court held that the trial court's findings of fact were not plainly wrong and its conclusions of law (such as the parol evidence rule not being violated) were correct. This Court also stated that the Arcuris were to "keep the insurance money[.]" 165 W.Va. at 133, 267 S.E.2d at 458. This "insurance money" is the insurers' checks, made payable to Victor P. Arcuri and Bertha Ann Mundy, which checks had been tendered to the Clerk of the trial court. See the discussion *infra* in the body of this opinion.

damage to that structure in the amount of $1,851.30. The insurers tendered full payment to "Victor P. Arcuri and Bertha Ann Mundy under contract of sale as their interests may appear." Again, Ms. Mundy refused to endorse the checks pending the litigation brought by her. These checks were written in April, 1977, and like the checks for the damage to the tavern, were tendered to the Clerk of the trial court.

On November 29, 1978, while the litigation concerning Ms. Mundy's failure to purchase fire insurance was pending, the appellants brought this action for the delay in payment of the fire insurance proceeds to the appellants under their policies. Their second amended complaint sounds in tort and contract. The allegation is that the insurance agency acted with bad faith when it issued the purported endorsements adding Ms. Mundy as an insured without the consent of the appellants, thereby causing "contractual damages" until the date of payment to the appellants. The theory of recovery against the insurers is that they allegedly breached their contractual duty to pay the appellants without delay and that such breaches of contract were "willful, wanton and intentional," resulting in consequential damages (the cost to repair the tavern had risen substantially) and mental anguish. Thus, the appellants seek not only compensatory damages beyond the limits of the policies but also punitive damages.[4]

After this Court, on June 17, 1980, issued the opinion in *Mundy v. Arcuri*, 165 W.Va. 128, 267 S.E.2d 454 (1980), see n. 3, *supra*, the insurers, in July, 1980, reissued checks to Victor P. Arcuri and Bertha Ann Mundy,

and the trial court entered an order on November 25, 1980, requiring Ms. Mundy to endorse the reissued checks.[5] On December 26, 1980, she endorsed the checks, and the appellants, after about four years, finally received the insurance proceeds for the previously proven damages to the tavern and to the dance hall (totalling $13,-751.30, that is, $11,900.00 for the tavern and $1,851.30 for the dance hall).

The trial court in this action denied the appellees' motions for dismissal based upon the alleged running of the statute of limitations for tort actions. The record indicates that the trial court would have, upon motion, addressed this point after the presentation of evidence. The trial court also denied the appellees' motions for summary judgment because there was a genuine issue as to a material fact, specifically, whether the appellants consented or acquiesced to the purported endorsement to the policies adding Ms. Mundy as a named insured.[6]

After all of the parties made opening statements at trial, the trial court granted the motions of the insurers and of the insurance agency for a directed verdict. The trial court ruled that, even assuming all of the appellants' factual allegations to be true, the appellants had no case against the appellees because the delay in payment to the appellants was due to the resolution of other litigation (*Mundy v. Arcuri*), and not due to any conduct of or omissions by the appellees.

## II

The narrow question presented on this appeal is whether the trial court committed

---

4. For a discussion of the split of authorities on the types of damages recoverable for an insurer's delay in payment of insurance proceeds *see generally* 44 Am.Jur.2d *Insurance* § 1771 (1982); annot., 47 A.L.R.3d 314 (1973). It is not appropriate on this appeal in advance of trial of the issues to address this area of the law. No party has raised the questions here, due to the trial court's ruling that the appellants after opening statement had clearly shown they had no case, as the delay in payment was due to other litigation, not due to conduct of or omissions by the appellees.

5. The original checks, issued nearly four years earlier, had become "stale." There is no apparent reason why the reissued checks were made payable to Mr. Arcuri and Ms. Mundy, in obvious disregard of this Court's opinion in *Mundy v. Arcuri*, that the insurance proceeds belonged to the Arcuris.

6. The trial court also denied the appellants' oral motion, on the day of trial, for leave to file a third amended complaint adding a claim of tortious interference with the insurance contracts. Due to our disposition of this case, it is not necessary to address the appellants' assignment of error on this point.

reversible error in directing a verdict against the appellants after all of the parties had made opening statements and before the presentation of any evidence.

While a trial court has the power, in a proper civil case, to grant an adverse party's motion for a directed verdict after a party's opening statement, it is an exceptional case in which such a ruling is proper. The leading case in this jurisdiction on point is *Alexander v. Jennings*, 150 W.Va. 629, 149 S.E.2d 213 (1966). Syllabus points 1 and 2 thereof summarize the law as follows:

1. The trial court may take the case from a jury by a directed verdict or a judgment of dismissal or other procedure when it is clear from the opening statement that the plaintiff can not recover or that the defendant has no defense; but this authority should be exercised cautiously and only in a clear case.

2. The trial court has the power to direct a verdict for or to dismiss the defendant from the case upon the opening statement of counsel for the plaintiff when such statement shows clearly that the plaintiff has no right to recover and this power of the trial court is as plain as its power to act upon evidence produced. The exercise of this power in a proper case is not only not objectionable, but is convenient in saving time and expense by shortening trials; but such power is not properly exercised if the opening statement leaves doubt as to the facts or permits conflicting inferences. Where uncertainty arises from a conflict of testimony or because, the facts being undisputed, fair-minded men may honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury.

*See also Best v. District of Columbia*, 291 U.S. 411, 415, 54 S.Ct. 487, 489, 78 L.Ed. 882, 885 (1934); annot., 5 A.L.R.3d 1405, 1411–12 (1966).

"[T]he opening statement of counsel is ordinarily intended to do no more than to inform the jury in a general way of the nature of the action and the defense in order that the jury may better be prepared to understand the evidence." *Alexander v. Jennings, supra*, 150 W.Va. 629, 636, 149 S.E.2d 213, 218 (1966). " 'Thus, in order to justify the entry of a judgment against a [plaintiff] on his opening statement, the admissions therein should be distinct and such as absolutely preclude a recovery; in other words counsel must clearly ruin his own case, . . .' " *Id.*, 150 W.VA. at 634, 149 S.E.2d at 217 (authority cited therein omitted).

*Alexander* was followed by *Carper v. Kanawha Banking & Trust Co.*, 157 W.Va. 477, 207 S.E.2d 897 (1974). Syllabus point 12 of *Carper* explains the *Alexander* principle in this manner: "Dismissal or directed verdict at the conclusion of an opening statement should be granted only where the party making the statement, if given the opportunity to amend or explain, cannot recover [or defend] under any circumstances." *Carper*, in syllabus point 11, also reiterates *Alexander's* language that directing a verdict after an opening statement is a discretionary matter: "A motion to dismiss the case of a party or to enter a directed verdict against a party based upon statements made by him in his opening to the jury is addressed to the sound discretion of the trial court." Thus, after hearing an opening statement, a trial court may, in order to save time and expense, grant a motion by an adverse party for a directed verdict where it is clear that, if he is given the opportunity to amend or explain, the party making the opening statement has no claim or defense; but, even in such a case, the trial court is not required to grant a motion for a directed verdict after the opening statement but, instead, may wait until after the presentation of evidence before deciding whether to direct a verdict. *Cf. Amos v. Carr*, 170 W.Va. 150, 151, 291 S.E.2d 465, 466 (1982): "[A] judge should [ordinarily] hear evidence at trial even if he anticipates directing a verdict[,]" rather than granting a motion for summary judgment. *See also* syl. pt. 1, *Masinter v. Webco Co.*, 164 W.Va. 241, 262 S.E.2d 433 (1980).

In deciding whether to direct a verdict after an opening statement the trial

court should assume as true the factual allegations of the party against whom the motion for directed verdict is made. " 'Upon a motion for a directed verdict, all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed.' " Syl. pt. 1, *Rowan v. Barker*, 175 W.Va. 492, 334 S.E.2d 630 (1985), quoting syl. pt. 5, *Wager v. Sine*, 157 W.Va. 391, 201 S.E.2d 260 (1973). *See also* syl. pt. 6, *Prager v. Meckling*, 172 W.Va. 785, 310 S.E.2d 852 (1983); syl. pt. 3, *Robertson v. LeMaster*, 171 W.Va. 607, 301 S.E.2d 563 (1983); syl. pt. 2, *Ashland Oil, Inc. v. Donahue*, 164 W.Va. 409, 264 S.E.2d 466 (1980).[7]

■ Applying these principles here, we conclude that the trial court should not have directed a verdict against the appellants after opening statements by the parties. In this case the purported endorsements to the appellants' fire insurance policies adding Ms. Mundy as a named insured were—assuming the allegations of the appellants to be true—wrongfully made, that is, without the consent of the appellants. If that is proved to be the case, the insurance proceeds should have been paid, under *W.Va.Code*, 33–17–12 [1965], to Mr. Arcuri alone (and not also to Ms. Mundy as a joint payee), as "the person or persons designated in the polic[ies.]" *W.Va.Code*, 33–17–12 [1965] provides:

Whenever the proceeds of or payment under a policy of fire insurance covering property located in West Virginia heretofore or hereafter issued becomes payable, and the insurer makes payment thereof to the person or persons designated in the policy or contract or if the proceeds have been assigned and written notice of such assignment given to the insurer, to the person or persons being entitled thereto by virtue of such assignment, such payment shall fully discharge the insurer from all claims under the policy or contract. This section is declared to be applicable to all insurers, including farmers' mutual fire insurance companies.

Under this statute the insurers would have fully discharged their liability for all claims under the policies, including Ms. Mundy's, by payment to Mr. Arcuri alone as the only person properly "designated" in the policy.[8] *W.Va.Code*, 33–17–12 [1965], by providing that payment of the proceeds under a fire insurance policy to the person or persons designated in the policy fully discharges the insurer from all claims under the policy, makes it inappropriate for an insurer, which has wrongfully added an insured person to a fire insurance policy, to merely tender the proceeds to the clerk of the court in a pending action in which the parties are the joint payees of the proceeds, namely, the only person properly designated in the policy as an insured and another person, not properly designated as an insured in the policy but who claims an interest in the proceeds. The delay in payment to the person properly designated as an insured in the policy would, in such a case, be attributable to the insurer's wrongful designation of the additional insured person and the insurer's failure to follow the statute on payment to the person designated in the policy as the insured. The delay in payment would not be due to the resolution of litigation in which the insurer was not involved or was involved only as a stakeholder, as held here by the trial court.[9]

---

7. This principle is to be contrasted with the principle that a motion for a directed verdict is to be granted, after the presentation of evidence, in the exceptional case where reasonable minds could not differ, so that a verdict in favor of the party against whom the motion for a directed verdict is sought would have to be set aside. *See* syl. pt. 4, *Troy Mining Corp. v. Itmann Coal Co.*, 176 W.Va. 599, 346 S.E.2d 749 (1986).

8. If the insurance agency wrongfully added Ms. Mundy as a named insured, the insurers may not take advantage of their agent's wrong, and now claim that Ms. Mundy was a "person … designated in the policy[,]" within the meaning of *W.Va.Code*, 33–17–12 [1965].

9. *But cf. State Farm General Insurance Co. v. Clifton*, 86 N.M. 757, 527 P.2d 798 (1974) (insurer justified in bringing interpleader action to determine whether contract seller/named insured or contract buyer of residence was entitled to fire insurance proceeds; insurer did not wrongfully consider contract buyer as a potential insured in light of evidence of an assignment; no statute like *W.Va.Code*, 33–17–12 dis-

### III

The insurers here argue that an insurer, where there is a controversy between claimants, may, ordinarily, satisfy its obligation by paying the proceeds into court. 6 J. Appleman and J. Appleman, *Insurance Law And Practice* § 4008, at 740–41 (1972). The insurers here did not, however, deposit or pay the proceeds into court in accordance with the procedure set forth in *W.Va.R.Civ.P.* 67.[10] The insurers merely lodged checks (payable to the contestants) in the court file, and these checks were not payable to the clerk for immediate investment by the clerk (or by another general receiver appointed by the court), as the court would order. *Cf. United States ex rel. Garrett v. Midwest Construction Co.*, 619 F.2d 349, 353–54 (5th Cir.1980) (filing of motion for leave to deposit does not prevent accrual of interest; party proceeding under Rule 67 must deprive itself of the use of the money); *First Federal Savings & Loan Association v. United States*, 288 F.Supp. 477, 481 (W.D.Mo.1968) (tender of payment was not sufficient where leave of court was not obtained to deposit defendant's check with trial court, as required by Rule 67, but, rather, it was the court which, without motion, directed informally that check be deposited with clerk of court and held by him pending outcome of case).

In *State ex rel. Blake v. Enslow*, 41 W.Va. 744, 24 S.E. 679 (1896), this Court held that payment of money to the clerk of the court, without obtaining, upon motion, an order of the court showing that it had received the money and had placed it under the control of the clerk, is not equivalent to the payment of money into court. In *Blake* the statutory predecessor to *W.Va. R.Civ.P.* 68(b), on payment into court by a defendant, authorized the defendant to "pay into court to the clerk[.]" The Court held, though, that a court order placing the money with the clerk was required.

In the case now before this Court there is no record of any court order placing the insurers' checks in the clerk's custody. There was, therefore, no deposit or payment into court as required by law. *W.Va. R.Civ.P.* 67 was designed to prevent the precise problems which resulted here, specifically, (1) the lack of total control by the court over the money in question, including the timing of payment to the person entitled thereto, and (2) the loss of interest on the money in question pending judicial determination of the proper disposition of the money.

*W.Va.R.Civ.P.* 67 contemplates that a deposit or payment into court be with leave of court and that the money ordered deposited be subject to the exclusive control of the court. The party making the deposit must surrender all control over the money to the court, not to other persons claiming an interest in the money.

charging insurer upon payment to named insured); *Little Rock Road Machinery Co. v. Light*, 240 Ark. 1012, 403 S.W.2d 726 (1966) (insurer, in an action against it by conditional buyer of tractor damaged by fire, held not liable to conditional seller/named insured, who was aware of such litigation but did not timely participate therein, for delay in payment, where insurer, upon conditional buyer's refusal to accept check payable jointly to him and conditional seller, paid proceeds into court; no statute like *W.Va. Code*, 33–17–12 discharging insurer upon payment to named insured); *Lee v. Preiss*, 18 Wis.2d 109, 118 N.W.2d 104 (1962) (life insurer discharged its obligation by paying proceeds into court in an action (by a previous beneficiary) to which the named beneficiary is a party; no statute like *W.Va.Code*, 33–17–12 discharging insurer upon payment to named insured). It was not alleged in any of these cases that the insurer wrongfully added an insured person or beneficiary, causing a delay in payment, as is the allegation in the case now before this Court.

10. *W.Va.R.Civ.P.* 67 provides as follows:

Except as otherwise provided in Rule 68(b), in an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money, a party, upon notice to every other party and by leave of court, may deposit with the court all or any part of such sum. Money paid into court under this rule shall be received by the clerk or general receiver of the court, to be held and paid out by him in accordance with applicable statutes and with orders of the court entered in the action.

See *W.Va.Code*, 51–6–1 [1931], *et seq.* for provisions relating to general receivers, including the duty of such receivers to invest all moneys paid into court.

## IV

 The trial court also held that the appellants had not sustained any damages, as they ultimately received the amounts due under their policies. This holding ignores the four-year delay in receipt of the proceeds caused by the insurers' allegedly wrongful designation of a joint payee, which allegation must, as stated above, be accepted as true for the purpose of deciding whether to direct a verdict against the appellants after their opening statement. The insurers would, therefore, at least be liable for interest on the proceeds from the date due (under the policies, no later than 60 days after receipt by the insurers of proof of loss) until the date the proceeds were actually received by the appellants, whether the action against the insurers is for breach of contract or for the tort of bad faith delay in payment. *See W.Va.Code,* 56–6–31 [1981]; *Bond v. City of Huntington,* 166 W.Va. 581, 276 S.E.2d 539 (1981).

For the foregoing reasons the final order of the trial court is reversed, and this case is remanded for a new trial.

Reversed and remanded; new trial.